CLINTON COTTON MILLS, Inc., v. COMMISSIONER OF INTERNAL REVENUE.

No. 3793.

Circuit Court of Appeals, Fourth Circuit.
June 10, 1935.

Leo H. Hoffman, of New York City (Hoffman & Knox, Robert W. Knox, and William H. Matthews, Jr., all of New York City, on the brief), for petitioner.

Berryman Green, Sp. Asst. to the Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to the Atty. Gen., on the brief), for respondent.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals. The taxpayer is a corporation engaged in operating a cotton mill in the state of South Carolina; and the case involves a deficiency assessment for the years 1927, 1928, and 1929 due to the disallowance of a part of the depreciation claimed on plant and equipment and certain amortization deductions claimed on account of expenditures for paving. Three distinct matters are in controversy, viz.: (1) The depreciation to which taxpayer is entitled with respect to its machinery, mill buildings, and tenement houses; (2) the rate of depreciation which should be allowed on certain second-hand machinery purchased by taxpayer in the year 1927; and (3) the right of taxpayer to amortization deductions on account of expenditures made for sidewalks, curbing, gutters, and drainage in its mill village. We shall consider these in the order named.

As to the rate of depreciation, it appears that taxpayer's first mill was completed in 1897 and its second in 1907. Its property now is practically the same as it was on March 1, 1913, at which time it consisted of two mill buildings, 8 warehouses, a power house, 155 tenement houses, and cotton mill machinery consisting of 64,480 spindles, 1,430 looms, and other cot-

ton mill equipment. On this plant and equipment taxpayer claimed depreciation for the year 1927 in the sum of $91,231.-78, for 1928 in the sum of $107,833.53, and for '1929 in the sum of $110,547.16. The Commissioner reduced these deductions to $65,352.13, $74,817.66, and $80,350.60 respectively, basing his action upon valuations ascertained by taking the original cost of the property when acquired and depreciating it to and including the year 1926 at the rate of 3 per cent. for mill buildings, 4 per cent. for machinery, and 5 per cent. for tenements. This resulted in the complete writing off through depreciation of a considerable portion of the property prior to the tax years in question. Specifically, it eliminated from the base used for depreciation in the year 1927 machinery which cost $242,395.37 and tenements which cost $37,845.18, from that used in 1928 machinery of a cost of $252,017.78 and tenements of a cost of $41,647.05, and from that used in 1929 machinery of a cost of $255,510.27 and tenements of a cost of $41,672.44. On the remaining property, the Commissioner allowed depreciation for the tax years in question at the rate of 2 per cent. for buildings, 3½ per cent. for machinery (4 per cent. and 4.3 per cent. for 1928 and 1929) and 4 per cent. for tenements. The Board approved this basis of computation.

The position of the taxpayer is that all of the machinery and other property is still in use, and that the straight line method of depreciation, which results in eliminating a large part of it from the base used for computing depreciation for the tax years in question, should not have been adopted by the Commissioner under the peculiar circumstances of the case; that the depreciation charged off prior to 1913 was excessive; that the Board should have determined the value of the property as of March 1, 1913, and calculated depreciation on this basis; and that, if this were done, there would be included in the base used for calculating depreciation the value of the property which has been eliminated from consideration as a result of the method adopted. It contends that the Board erred in failing to determine the value of the property as of March 1, 1913, and that the method adopted in determining the base for calculating depreciation was arbitrary and unreasonable. The contention of the Commissioner, on the other hand, is that the schedule adopted by him and approved by the Board showed the 1913 value of the property; that there was nothing arbitrary or unreasonable in the method adopted; and that the entire question is one of fact, as to which the finding of the Board is sustained by substantial evidence and is therefor conclusive.

Evidence was introduced before the Board as to the value of the property in 1913, showing that it was of much greater value than the cost depreciated in accordance with the method adopted by the Commissioner; and in explanation of this, there was testimony that prior to 1913 the policy of the taxpayer had been to write off on its books by way of depreciation as much of its property as possible, and to charge to the account of expense many items which should properly have been charged to capital. Under these circumstances, we think that the duty rested upon the Board to determine the 1913 value of the property and to adopt it as a basis for computing depreciation if it was greater than the depreciated cost basis. Revenue Act of 1926, c. 27, § 202 (a) (b) and (c), 44 Stat. 9, 11 (26 USCA § 933 (a, b, c); Revenue Act of 1928, c. 852, §§ 23, 111 (a) (b), 113 (b), 114 (26 USCA §§ 2023, 2111(a, b), 2113(b), 2114). And we think that this duty was not discharged by adopting a schedule showing cost at time of acquisition and a depreciation allowance for the succeeding years, in the absence of a finding based on substantial evidence that this depreciated cost was greater than the fair market value of the property as of March 1, 1913.

The taxpayer was entitled to have depreciation computed on the basis of the 1913 valuation if this was found to be greater than depreciated cost; and it was entitled to have the depreciation based thereon applied throughout the useful life of the property or until the property had been completely depreciated. The vice of the method adopted by the Commissioner and approved by the Board is twofold: (1) It may result in the adoption of too small a value as a base for depreciation of particular items of property; and (2) it may result in improperly excluding the value of items from the base used for calculation of depreciation, as the result of these items being completely depreciated under the method adopted prior to the tax year in question. As to this last, it should be observed that where depreciation is based on cost and is calculated from time

of acquisition, an article may be completely depreciated in theory, whereas, if it has been properly maintained, it may in fact have many years of useful life. It is in this view that the 1913 valuation becomes of importance. Depreciation should be computed on such valuation in the light of the useful life of the property; and it is possible that this might entitle the taxpayer to depreciation far beyond the period when the property would be completely depreciated under the method adopted by the Commissioner and approved by the Board.

The Board did not find the March 1, 1913, valuation of the property, although there was ample evidence before it upon which such valuation could be based. Its opinion refers to the depreciated cost as of March 1, 1913, as shown by the Commissioner's schedules; but this depreciated cost was not used as a basis for computing depreciation. On the contrary, the depreciation which the Board approved was computed on original cost under a system which, as we have seen, eliminated from the base a considerable amount of property which admittedly had large value in 1913 and which under undisputed evidence in the case had a useful life beyond the tax years in question. It is argued, and the Board found, that there was no evidence upon which the remaining useful life of the property could be determined as of March 1, 1913; but this finding is not supported by the record. Not only was there positive testimony showing a useful life of twenty years or more from witnesses for the taxpayer, but experts introduced by the Commissioner gave testimony as to the useful life of machinery of this character, from which a determination could have been made by the Board.

■ It is well settled, of course, that the determination of the Commissioner is presumptively correct, and that we are bound by the findings of the Board if supported by substantial testimony. And it is the rule, also, that, even if the Board's decision is based on an erroneous rule of law, it will not be reversed if the findings of fact, governed by the correct rule of law, are sufficient to sustain the decision and have substantial support in the evidence. Helvering v. Rankin, 295 U. S. 123, 55 S. Ct. 732, 736, 79 L. Ed. ——. In this case, however, the finding as to the base upon which depreciation should be computed was grounded upon error of law; and there is no finding made in accordance with

the correct rule upon which the decision can be sustained. Reliance is placed upon the presumptive correctness of the determination of the Commissioner, but this shows upon its face the same error which vitiates the determination of the Board; and where it appears that the method pursued by the Commissioner is erroneous, the presumption of the correctness of his determination no longer avails. Russell v. Commissioner (C. C. A. 1st) 45 F.(2d) 100, 103.

■ We think, too, that the Board erred in practically disregarding, as having "very little weight" because based on reproduction cost, the oral testimony as to the 1913 value of the property. This testimony was given by expert witnesses who had knowledge of values as well as of the condition of the property. It is true that their opinion was based in large part upon reproduction cost, less depreciation; but it appears that market value of cotton mill property at that time was determined largely on this basis. While cost of reproduction is only one of the elements to be considered in estimating value, it by no means follows that the evidence of experts who testify generally as to value is to be disregarded because their opinion is based in part, even in large part, on cost of reproduction; and particularly is this true in a case where market value is determined largely on the basis of reproduction cost, as appears to be the case with respect to cotton mills. We do not mean to say that the testimony of experts as to value must be followed by the Board. See Anchor Co. v. Commissioner (C. C. A. 4th) 42 F.(2d) 99. What we do mean to say is that it is error to disregard it arbitrarily. Bryant v. Commissioner (C. C. A. 2d) 76 F.(2d) 103; Blackmer v. Commissioner (C. C. A. 2d) 70 F. (2d) 255, 257, 92 A. L. R. 982. Even if the Board were not disposed to accept the testimony of the witnesses as to the 1913 valuation in its entirety, it should certainly have determined that value in the light of this testimony and the other evidence in the case. When it held that, because the taxpayer did not prove the value of the property on March 1, 1913, to its satisfaction, the computation of the Commissioner based solely upon depreciated cost must stand, we think that it erred as a matter of law. B. F. Sturtevant Co. v. Commissioner (C. C. A. 1st) 75 F.(2d) 316, 323.

■ On the second point, the depreciation to be allowed on certain secondhand ma-

chinery, it appears that this machinery was purchased in 1927 at a cost of $51,992.49. The Board allowed depreciation just as though this were new machinery, although there was uncontradicted evidence that the major portion of it was constructed in 1918. We think that it was error not to take this testimony into consideration in fixing the rate at which depreciation should be allowed. Certainly as much as one-half of the machinery should have been depreciated, not as new machinery, but as secondhand machinery which had been built 9½ years before. The remaining useful life could have been calculated easily from the testimony before the Board as to the useful life which was to be expected from machinery of this character. To deny this relief, as the Board did, merely because evidence was not offered as to the condition of the machinery when purchased was too technical. In the absence of proof to the contrary, it was a fair inference that 9½ years of the useful life of machinery built 9½ years before was gone. What depreciation should be allowed on the machinery was, of course, a question of fact for the Board; but it was error, as matter of law, not to determine the useful life of the secondhand machinery for purpose of computing depreciation when the evidence was uncontradicted that so large a portion of it was secondhand.

And we think there. was error, also, in the Board's action with respect to taxpayer's claim to amortization deductions on account of expenditures made for sidewalks, curbing, gutters, and drains in its mill village. This paving work was done on taxpayer's property at a cost in 1927 of $21,717.05, in 1928 of $1,146.05, and in 1929 of $16,793.52. It appears that $5,637.89 of this was expended for work done on streets over which the taxpayer conveyed a right of way to the city of Clinton, S. C. The city does not appear to have any rights over the streets in the village on which the other paving was done. Nevertheless the Board disallowed the entire claim of taxpayer with respect to this matter. Certainly, with respect to the expenditures on its private property over which right of way was not deeded to the city, these were capital expenditures as to which the taxpayer was entitled to amortization deductions was claimed. Appeal of L. Z. Dickey Grocery Co., 1 B. T. A. 108, 110. And we do not think that the fact that the city was given a right of way over the streets upon which

the $5,637.89 was spent makes any difference. The expenditures were made for the benefit of taxpayer's property and added to its value; and, under such circumstances, should be treated as additions to capital. See Appeal of Caldwell Milling Co., 3 B. T. A. 1232. We need not pass upon the questions decided in F. M. Hubbell Son & Co. v. Burnet (C. C. A. 8th) 51 F.(2d) 644, as the principles upon which that decision rests are clearly not applicable here.

The decision of the Board will be reversed, and the case will be remanded to it for further proceedings not inconsistent herewith.

Reversed and remanded.