**UNITED STATES of America, Appellant,**

v.

**Herbert D. HOVER, Doing Business as Ciro's Appellee.**

**No. 16105.**

United States Court of Appeals Ninth Circuit.

June 15, 1959.

---

Charles K. Rice, Asst. Atty. Gen.,
Davis W. Morton, Jr., Lee A. Jackson,
Robert N. Anderson, Louise Foster, At-
torneys, Department of Justice, Washing-

ton, D. C., Laughlin E. Waters, U. S. Atty., Edward R. McHale, Asst. U. S. Atty., Los Angeles, Cal., for appellant.

Ernest R. Mortenson, Pasadena, Cal., for appellee.

Before STEPHENS, CHAMBERS and BARNES, Circuit Judges.

BARNES, Circuit Judge.

This is an appeal involving alleged deficiencies in cabaret taxes assessed against the taxpayer, for the period June 1, 1951 to March 31, 1955, in the amount of $67,660.62. In 1956 taxpayer paid $300 of such assessment and filed a timely claim for refund of such amount. The claim was rejected by the District Director. The taxpayer then filed suit in the district court for refund of the taxes paid. The United States answered the complaint, and counterclaimed for the balance of the taxes allegedly due, some $75,219.13, with interest. On February 28, 1958, the district court entered judgment ordering that taxpayer take nothing by his complaint for refund of the $300, and that the United States have judgment against the taxpayer on its counterclaim in the sum of $7,463.86, together with interest thereon until paid. Motions for a new trial and to amend and make additional findings and conclusions were both denied. Timely notice of appeal was filed by the government.

The district court jurisdiction rested on 28 U.S.C. § 1346(a) (1). This court has jurisdiction by virtue of 28 U.S.C. § 1291.

Essentially the issue presented is whether a cabaret tax may be collected by the government on the total amounts expended by patrons present on some part of the taxpayer's premises, attending private parties during the evening, and staying on to see floor show entertainment open to the general public, or alternatively, whether the government can collect taxes only on the amount expended by patrons after the private parties ceased to be private parties.

The statute under which the government claims the alleged deficiencies arose, reads in pertinent part:

"§ 4231. Imposition of tax. There is hereby imposed:

\* \* \* \* \* \*

"(6) *Cabarets.*—A tax equivalent to 20 percent *of all amounts paid* for admission, refreshment, service, or merchandise, at any roof garden, cabaret, or other similar place furnishing a public performance for profit, by or for any patron or guest *who is entitled to be present during any portion of such performance.* The tax imposed under this paragraph shall be returned and paid by the person receiving such payments. \* \* \*" 26 U.S.C. § 4231 (Int. Rev.Code of 1954). [Emphasis added.]

The term roof garden, cabaret or other similar places is defined by Int.Rev.Code of 1954, Section 4232 to "include any room in any hotel, restaurant, hall, or other public place where music and dancing privileges or any other entertainment, except instrumental or mechanical music alone, are afforded the patrons in connection with the serving or selling of food, refreshment, or merchandise. \* \* \*" 26 U.S.C. § 4232. Similar statutes contained in the 1939 Code govern part of the period of time covered here.[1]

The portions of the law above emphasized cause the dispute here. The government contends that the law must be literally applied to all sums received from anyone on the premises at any hour who may thus be *entitled* to view, while the taxpayer contends, and the lower court agrees, that the law is to be interpreted in less than a literal sense—that the tax becomes payable on amounts collected after any private party becomes public when the private party patrons join the general public in watching the performance of a floor show. The decision of

---

1. 26 U.S.C. § 1700(e), as amended. See, Landau v. Riddell, 9 Cir., 1958, 255 F.2d 252.

the lower court is reported in 158 F.Supp. 179.

The additional taxes allegedly due the government represent taxes on three types of receipts from taxpayer's operations which taxpayer did not consider taxable, due to the nature of his operations. Because taxpayer did not consider them taxable, he kept no records segregating these sums, nor did he have any record of the number of persons attending these private parties who stayed on to see the floor show, or for dancing.

Ciro's was once a famous night club located on Sunset Boulevard in Los Angeles County. It is not contended that the operations of this club to which the general public are admitted are not taxable. It is only the tax on receipts from certain private functions held at the club which are at issue here. The club is divided into three rooms in which its services and facilities are offered to the public. These are the main entertainment and dining room (hereinafter referred to as the Main Room), the Pavillion Room, and the Ciroette Room. Ciro's has widely advertised its entertainment and in its advertisements has offered its Pavillion and Ciroette Rooms for the use of private banquet groups. One of the several advertised inducements for such gatherings in those rooms was the opportunity to subsequently view the floor show.

There is little or no dispute as to the following facts:

*The Pavillion Room*: This room is located in a separate building which was added to the original structure some years after it was built. It is located adjacent to the lounge and is separated from it by a movable wall and thick soundproof curtain. The floor of the Pavillion Room is slightly higher than the floor of the lounge which is between the Main Room and the Pavillion Room. The Pavillion Room is used primarily for private organizations which reserve the room for the evening for the exclusive use of their members. (Occasionally, it has been used for overflow crowds from the Main Room.) At issue here is the taxability of one hundred per cent of the receipts for the services, food and refreshments served to some three hundred and four private parties in the Pavillion Room. These parties usually commenced at 7:00 P.M. and dinner was usually completed by about 10:00 P.M. On some occasions the movable wall would be moved back at 10:30 P.M. when the floor show began in the Main Room. Prior to the start of the floor show, the private organization would have paid the tab for the dinner, and the waiters would have departed. Anything thereafter served was subject to cabaret tax. The trial court found some twenty-five basic differences between the operations of, and dinners served in, the Pavillion Room and those in the Main Room. The Pavillion Room had its own separate entrance, although it was possible to enter or leave through the lounge.

*The Ciroette Room*: This room, like the Pavillion Room, was used for private parties. However, it is located on the second floor of Ciro's and members of the Ciroette private parties were required to go down a flight of stairs and pass through two doorways to the Main Room in order to see the floor show. It was stipulated that five per cent of the Ciroette patrons did in fact view the floor show, so that if any cabaret tax were to be due it would be computed on the basis of five per cent of the Ciroette Room receipts. The same basic difference between the services in the Ciroette Room and the Main Room discussed with respect to the Pavillion Room were found to apply to the Ciroette Room.

*"Closed House Parties"*: The government assessed a cabaret tax on the proceeds from twenty "closed house" private parties held during the period involved, on the ground that engaging the whole of Ciro's by a private organization was "regarded as a mere reservation of tables." On such occasions the entertainment and music usually provided were the same as was regularly staged

by Ciro's, and Ciro's advised the organizations as to the amount and distribution of payments to be made to the performers. The private organizations themselves contracted for the entertainment supplied at these closed house parties. Private groups, if they desired, could rent the Main Room without the entertainment and could furnish their own entertainment and orchestra. When Ciro's entertainers were retained by the private groups the latter had control over the time the performance began and the type of performance. Any service rendered by Ciro's was purely advisory and for the convenience of the private group. The district court found that Ciro's did not furnish the entertainment on these twenty evenings in issue. This was apparently because it also found that the private organizations remained free to reject the regular entertainment appearing at Ciro's, but if they chose to engage such performers, could modify the acts to suit their own purposes.

From these facts the district court concluded (1) that the statute imposing the tax is not intended to cover pre-performance parties where the patrons' desire to be present during the public entertainment was incidental to some more cogent reason for being present on the premises (such as a private gathering for the conduct of an organization's business); (2) that the words "entitled to be present" did not apply to the Pavillion or Ciroette Room parties where the main purpose of the private parties engaging the rooms was other than to be present at the entertainment; (3) that if the parties had ended before the floor show, or the partition had remained closed and the private party patrons excluded from observing the entertainment, the expenditures before 10:30 P.M. would not lie within the scope of the tax.

The parties stipulated that the sum of $5,200.63 represented the proper tax on drinks served after 10:30 P.M. in the Pavillion Room, and the court concluded that this amount was correct. The court held that *any* tax assessment on the

Ciroette Room receipts was improper. The court held, further, that with respect to the "closed house parties," the payments to Ciro's did not entitle the patrons or guests to be present during any public performances for profit, and therefore no tax could be collected on those receipts.

Ultimately, then, the government recovered judgment for the tax on the amounts paid for refreshments in the Pavillion Room after 10:30 P.M. and for its costs plus interest. Taxpayer took nothing under the judgment in spite of his claim for a refund.

Not satisfied with the district court's conclusion that the tax does apply to the private parties when they became a part of the general public entitled to and actually viewing the performance, the government argues on this appeal several propositions. First, that the statute must be applied literally, *i. e.*, it cannot be taken on a case to case basis, but the tax *must* always apply, if under the terms of the admission to the cabaret the patron is entitled to view the performance at any time. Under this argument, the government contends that the district court has here created some sort of "subjective test and that there is no authority in the statute for such a test, and if applied [it] would make administration of this statutory provision very difficult, if not impossible." Second, the government argues that, assuming *arguendo* that the district court's interpretation of the statute is correct, the decision must be reversed because its conclusion is contrary to the evidence and some of its own findings of fact. Third, the government contends that the presumption of correctness which attaches to all tax assessments should prevail since taxpayer did not overcome this, and in fact could not since he did not keep records as to this aspect of his operations which would reflect the correct tax, if the government's theories were adopted. Fourth, that as to the so-called "Closed House Parties" the regulation set forth as special ruling of August 31, 1949,

should govern,[2] and these parties should be "regarded merely as reservation of tables," and the tax should have been applied to these receipts.

### I.

It has been previously held that the statute under consideration cannot be applied literally without creating administrative difficulties. These were pointed out in La Jolla Casa de Manana v. Riddell, D.C.S.D.Cal.1952, 106 F.Supp. 132, affirmed per curiam 9 Cir., 1953, 206 F.2d 925. In that case the government unsuccessfully attempted to collect the cabaret tax on one-third of the proceeds collected by the establishment from patrons in the establishment after midnight when all music and dancing stopped. The government's argument there was that since the cabaret tax was admittedly collectable during the time that music and dancing took place (between 9:00 P.M. and midnight) that approximately one-third of the proceeds taken in after midnight represented receipts from patrons who were in the establishment prior to midnight and who were therefore "entitled to be present during the entertainment." Pointing out that the establishment ceased to be a cabaret at midnight, the district court said:

> "It is clear that Congress envisioned an essential unity between the service of refreshment and the enjoyment of the entertainment. The reason for the unity is the reason for the tax itself: that the payment for the refreshment should op-

erate to entitle the patron to view the entertainment, or participate in the dancing, as the case may be."

106 F.Supp. at page 135. The court there also pointed out that it would be a practical impossibility to keep track of those patrons who were in the establishment at a time entitling them to view the entertainment, and who were also there after midnight, as against those who came in after midnight for the first time. This would be necessary if the law were literally applied, since the first category would have to continue to pay tax on refreshments, etc., purchased after that time, while the latter category, not having been entitled to be present at the entertainment, would not.

Taxpayer relies on In re Alpine Village, Inc., N.D.Ohio 1958, 2 A.F.T.R. 2nd, P-H Fed. Excise Taxes, par. 195–614A, which in turn relies chiefly on the opinion in this case below, and La Jolla Casa de Manana v. Riddell, supra. It is an opinion of a referee in bankruptcy. While we cannot agree with the referee's reliance on Godwin v. Brown, 8 Cir., 1957, 249 F.2d 356 (which turned on a procedural technicality), he does convincingly present the merits of the reasoning underlying the district court opinions in the La Jolla and Hover cases.

The government relies heavily on Bush's, Inc. v. United States, D.C.E.D. Ill.1959, 171 F.Supp. 681, 684. There the taxpayer, opening his establishment at 8:00 P.M. and apparently closing at dawn, paid the tax on sales from 12:00

2. Special Ruling of August 31, 1949, 1950 C.C.H. par. 6053, reads in part as follows:

"Where a private organization arranges to hold an affair in a room at a hotel which normally is operated as a cabaret and the affair is held under such circumstances that the hotel furnishes practically the same services including entertainment, during the same hours that the room is operated as a cabaret, the arrangements made by the private organization are regarded as a mere reservation of tables. In such case, the Bureau holds that the room is operated as a cabaret on such occasions, even though the patronage is limited to the members, to-

gether with the guests of the private organization, and the private organization furnishes entertainment in addition to that furnished by the hotel. The cabaret tax then apples to the payment made by the private organization to the hotel.

\* \* \* \* \* \* \*

"Where a private organization holds a dinner in a room at a hotel, under such circumstances that the hotel does not furnish any entertainment but the private organization does provide dancing facilities for the persons attending by hiring an orchestra, or furnishes other entertainment, cabaret tax does not apply to any amount paid in connection with the affair."

midnight to 3:00 A.M. The government sued for a tax of thirty-three and one-third per cent of the total sales *before* the start of the taxable entertainment (8:00 P.M. to midnight), and for a tax of fifty per cent of the total sales *after* the end of the taxable entertainment (3:00 A.M. to closing time).

District Judge Juergens first disposed of the proposed post-entertainment tax by citing the La Jolla Casa de Manana case, and stating: "This Court has reviewed that opinion and the reasoning contained therein and is in whole-hearted agreement with the interpretation the District Court there placed on the statute."

He next considered the Alpine Village holding, and then, apparently in order to distinguish its facts from the case before him, stated: "In the instant case the evidence showed that some of the sales were paid for immediately and others were placed on guest checks which were paid at the time the patron departed the establishment." He concluded without further discussion that *"all payments* for services, refreshments, etc., made during the entertainment period were taxable, regardless of whether the purchases were made prior to or during the taxable [12:00 midnight to 3:00 A.M.] period." [Emphasis added.]

This element of *payment* after the taxable period started is not found in the facts of the instant case. It alone is sufficient to factually differentiate the Bush case from this.

Although the Bush case was handed down on March 16, 1959, it makes no reference to the Hover case, decided in the district court on January 3, 1958. It relies solely on the La Jolla and Alpine Village cases, supra.

The government's contention that this law should be literally applied is weakened by the Commissioner's own regulations, which indicate that he does not literally apply the law. Rev.Rul. 54–487 provides that the tax does not apply to those who leave the establishment prior to the entertainment, those who enter and leave during an intermission, or those who enter after the entertainment has ceased.[3]

The heart of the government's argument is that the individuals attending the private parties in the Pavillion Room and the Ciroette Room, by the terms of the arrangements with Ciro's, were *entitled* to be present at the entertainment whether they were there or not, and therefore that *all* receipts from the Pavillion Room, plus five percent of those from the Ciroette Room, are taxable— whether received prior to or during the entertainment. The fact that these individuals were primarily present for a private function in a private dining room carries no weight with the government. The government would not let us look any further than the word "entitled," for it says the court must take the plain terms of the statute in their ordinary and commonly accepted meaning. It accuses the district court of reading "into the statute something which was neither included nor intended by Congress, namely a subjective test as to the motive of patrons who stay for a floor show after attending a private party in some room of a cabaret."

 This argument ignores several factors. Every law requires some interpretation, if only an examination of the meaning of its words, and an examination of the factual situation at hand to determine if the law is applicable to those

3. Rev.Rul. 54–487, 1954–2 Cum.Bul. 376 states:

"It is held that payments for food, refreshment, service or merchandise, made prior to the beginning of the entertainment in a cabaret, roof garden or other similar place, are subject to the cabaret tax imposed by § 1700(e) of the Code where the patrons or guests by or for

whom such amounts are paid remain for any portion of the entertainment afforded. However, the tax does not apply to payments made by or for patrons or guests who leave the establishment prior to the beginning of the entertainment, or who enter and leave during an intermission period, or who enter after the entertainment has ceased." [Emphasis added.]

facts. If this process is applying a subjective test to the law, then whatever it is termed, it is necessary. In the second place, the district court did not, as the government argues, read language into the statute. It did decide that the obvious meaning was that the tax was to apply to receipts received by a business when it was operating as a cabaret, and when those receipts at that time entitled the customer to be present at entertainment. The court concluded that when patrons of the cabaret come there for a private party in a separate room that the tax could not fairly be applied to the receipts from that party, but that when the private party ended and the patrons became part of the general public present at the entertainment then the tax should apply to the receipts. In short, so long as the private party remained private and saw none of the public entertainment, the receipts were not taxable, but when the private party ended and private patrons became part of the public present at entertainment, they should be required to pay the tax.

■ There is considerable legislative history indicating an intention of Congress to levy this tax on receipts taken in *during* entertainment and not otherwise. Pointing out that originally the tax was on admissions, but that it was administratively very difficult to apply to cabarets, a Senate committee report which amended the law in 1942, after it had previously been changed to a levy on the total charges by a cabaret, says: "Thus the tax will be collected although a cabaret does not increase its prices for food or beverages *while its floor show is in progress.*" S.Rep. No. 1683, 77th Cong., 2d Sess., p. 79. The report goes on to say that this amendment confirms the Treasury Department's interpretation that the tax applies *in any room* in a hotel, restaurant, hall, or other public place *where music and dancing privileges, or other entertainment are afforded the patrons in connection with the serving or selling of food, refreshment or merchandise.* Thus, it seems perfectly clear that the law was not meant to apply to private dinner parties merely because the dinners were in a building or hotel housing a cabaret, but in a separate room thereof. Of course, the tax would of necessity apply, and the lower court so held, when a private party ends, and the patrons become part of the general public by the removal of a movable wall so that they could see a floor show. This, even though they remain within their original room.

This conclusion is in accord with the La Jolla Casa de Manana case previously cited. As the quoted portion of it indicates, this tax is clearly to be applied when there is the combination of entertainment, and refreshments or food. In the La Jolla Casa de Manana case the tax was held not to apply *after* the entertainment concluded. In this case the lower court held that it does not apply to functions independent of the cabaret aspects of Ciro's restaurant ending *prior* to the entertainment. The weakness of the government's position is apparent if we consider the example suggested by the trial judge. If the government position were adopted *all* receipts of a day-long convention at Ciro's would be taxable simply because at 10:30 P.M. the conventioneers ended their private function and attended the floor show along with the general public. They were entitled to so view it, but so was the general public, who had not been previously present. They were to be taxed because they attended the entertainment and then ordered food or drinks, not because they had previously spent the day on the premises. Certainly Congress could not have intended that had these private dinner parties ended at 10:30 P.M. and everyone had paid their bill and gone home without seeing the floor show, that the proceeds from them would have been taxable, because they were *entitled* to stay.

We conclude the district court's interpretation of the law is correct.

### II.

■ As to the government's second contention that even if we follow the in-

terpretation above approved, the findings and conclusions of the trial court do not support the lower court's decision, we cannot agree. The court held that since seeing the floor show was merely incidental to the more important purpose of attending the private gathering, the tax could not be applied. The government argues that the evidence "established that the persons who held private parties at Ciro's were primarily interested in seeing the floor show." The trial court disagreed. This is a pure question of fact, the determination of which we are bound to accept, unless clearly erroneous. Fed.R.Civ.P. 52(a), 28 U.S.C. We cannot say that the trial judge, who was in a position to weigh the evidence and observe the witnesses, was clearly erroneous on this record.

Aside from this, however, we do not perceive that this finding would be determinative in any case, for we rest our conclusion on the fact that the functions in question were private dinner parties which were not taxable. Only when the parties ended and the patrons became part of the general public did the receipts become taxable, simply because after that point these patrons were no different from those in the Main Room, except that they were sitting in a different portion of the club.

■■ The argument of the government that the presumption of correctness attending the Commissioner's determination was not overcome is inapplicable to a situation such as we have here. It is well settled law that this presumption may be rebutted by a showing that the Commissioner's determination is arbitrary or erroneous. Helvering v. Taylor, 1935, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623; Greenwood v. Com'r, 9 Cir., 1943, 134 F.2d 915. Here the government assessment was based on an erroneous view of the law, which, when rejected by the district court judge, necessarily fell of its own weight. The taxpayer does not have to produce *evidence* in order to overcome the presumption when he has succeeded in showing that the assessment was erroneous because based on an er-

roneous view of the law. Clinton Cotton Mills, Inc. v. Com'r, 4 Cir., 1935, 78 F.2d 292, 295. Furthermore, he does not have to show what the correct tax should have been. Helvering v. Taylor, supra.

### III.

We pass to a consideration of the so-called "closed house" parties. The government's argument that the proceeds of these parties should be taxable is based entirely on the Special Ruling issued by the Commissioner of Internal Revenue in August 1949, quoted in note 2, supra.

■ There are many reasons why this regulation, which is based on what the taxpayer calls a "fantastic presumption," is not applicable here. In the first place, by its own terms it purports to apply only to a *hotel* "operated as a cabaret." No one has contended that Ciro's is a hotel. But more important, the district court held that it was unnecessary to rule on the validity of this regulation because it concluded that on the evidence it was plain that Ciro's did not furnish the entertainment. The evidence shows that Ciro's made all the arrangements for the private organizations, including in some cases handing the organizations' checks to the performers. But in every case the organization itself, and not Ciro's, paid the performers and decided just what entertainment would or would not be provided. The organizations had control over the time of performance, and the type of performance. No "hotel furnish[ed] practically the same services, including entertainment" the regulation requires. Ciro's merely assisted its patrons in obtaining what they desired by way of entertainment. That the organizations *usually* chose to take the precise entertainment which Ciro's was currently employing is not controlling here. Private organizations were not required to, nor did they always, take the current show Ciro's was using. So long as this was true, and so long as the organizations controlled the entertainment used, we cannot say that the district court was incorrect in concluding that Ciro's did not furnish the entertainment. Since

they did not furnish it, the ruling cannot apply and the receipts from these parties are not taxable.

We conclude that the district court was correct in its interpretation of the law, and in its application. We approve the findings upon which the decision was based.

The judgment is affirmed.