Catherine **CARROLL,** t/a **Carroll's Cafe**
v.
**UNITED STATES of America.**
Civ. A. No. 27326.

United States District Court
E. D. Pennsylvania.
June 19, 1962.

Stanley M. Greenberg, Ochman & Greenberg, Philadelphia, Pa., for plaintiff.

Drew J. T. O'Keefe, U. S. Atty., J. Shane Creamer, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

LUONGO, District Judge.

This is a suit, tried to the Court without a jury, by a taxpayer against the United States to recover $12,000.00 deposited by taxpayer in escrow with defendant. The fund was deposited with defendant to enable taxpayer to sell her cafe business free of liens for cabaret taxes for the years 1953, 1954 and 1955 resulting from additional assessments, interest, statutory costs and lien fees totalling $19,595.19. On July 10, 1957, defendant applied the sum so deposited in partial satisfaction of the additional assessments. Defendant counterclaims herein to recover the sum of $7,595.19, representing the unpaid balance of the additional assessments. On pleadings and proof, the Court makes the following

## FINDINGS OF FACT

1. Plaintiff, Catherine Carroll, during the years in question, conducted a cafe business under the name Carroll's Cafe at 141 South 52nd Street, Philadelphia, Pennsylvania.

2. In the latter part of the year 1956, Edmund Costantini, an agent for the Internal Revenue Service, conducted an investigation of Carroll's Cafe and examined the books to determine the accuracy of returns made for the years 1953, 1954 and 1955 for cabaret taxes.

3. On the basis of the examination of the books and records, interviews with Harry Carroll, with a representative of the booking agency for Carroll's Cafe, an examination of the employee work-records of said cafe, cash register records

of receipts and records of amounts paid for entertainment expenses, Costantini determined that plaintiff had understated sales subject to cabaret tax for the years 1953, 1954 and 1955.

4. Carroll's Cafe opened for business at various hours ranging from the legally permissible opening hour of 7:00 a. m., Standard Time, or 8:00 a. m., Daylight Saving Time, until as late at 2:00 p. m., and remained open until the legally permissible closing hour, 2:00 a. m., Standard Time; 3:00 a. m., Daylight Saving Time, for week days, and 12 midnight, Standard Time and 1:00 a. m., Daylight Saving Time on Saturday nights.

5. From the time of opening until 9:00 p. m. there was only one bartender on duty. From 9:00 p. m. until closing there were two bartenders on duty. From the time of the opening of the cafe until 8:30 p. m. there were no waitresses on duty and after 8:30 p. m. there were two and sometimes three waitresses on duty until closing time.

6. Prices charged for beverages served by Carroll's Cafe changed at several times during the day. Prices until 6:00 p. m. were 35 cents for beer and 45 to 50 cents for whiskey. From 6:00 p. m. to 9:00 p. m. the price of beer was raised to 50 cents; from 9:00 p. m. until closing beer and whiskey were sold for 75 cents. Approximately 95% of all sales made were collected for as soon as the drinks were served.

7. From 9:00 p. m. until closing, Carroll's Cafe provided continuous entertainment, some of which consisted of instrumental music only, and some of which presented performances by singers, dancers, etc. (The latter will be hereinafter referred to for convenience as "floor show"). In the cafe a sign painted on the wall informed patrons that the prices of drinks included federal excise tax.

8. Plaintiff recorded sales made at different times during the day by various cash register symbols.

(a) The symbol "CG" was used to record all sales from the time of opening until the start of the first floor show. It was also used to record all sales made from the end of the last floor show until closing.

(b) The symbol "SP" was used to record all sales made during the time floor shows were in progress.

(c) The symbol "RT" was used to record all sales made during the intervals between floor shows.

9. During the years in question, annual sales were recorded for each of the symbols as follows:

|  | 1953 | 1954 | 1955 |
|---|---|---|---|
| CG | $49,663.82 | $49,363.75 | $42,054.55 |
| RT | $31,540.45 | $30,809.75 | $24,410.85 |
| SP | $16,243.55 | $15,606.80 | $12,165.25 |
|  | $97,447.82 | $95,780.30 | $78,690.65 |

10. During the years in question, plaintiff paid the following amounts for entertainment expenses:

|  | Floor Shows | Band Expenses |
|---|---|---|
| 1953 | $31,625.86 | Unspecified (not recorded in plaintiff's books) |
| 1954 | $35,727.00 | $10,996.00 |
| 1955 | $28,150.00 | $11,308.44 |

11. Throughout the year Carroll's Cafe provided continuous entertainment from 9:00 p. m. until closing. When Daylight Saving Time was in effect plaintiff presented three floor shows, and when Standard Time was in effect, two floor shows each evening, the first one commencing at 10:00 p. m. The floor shows last 45 to 50 minutes each and the intervals between shows lasted approximately 45 minutes each. The last floor show usually ended 30 to 45 minutes before closing.

12. Plaintiff transacted much more than one-half of its dollar volume of business from 9:00 p. m. until closing from sales made to patrons attracted to the cafe by the entertainment offered. The heaviest concentrations of sales occurred just prior to the commencement of the first floor show, during the intervals between floor shows and immediate-

ly following the conclusion of the last floor show.

13. Based upon his investigation, Revenue Agent Costantini concluded that 60% of plaintiff's sales were made between the hours of 9:00 p. m. and the time of closing. The additional taxes assessed by defendant were based on the inclusion of all sales so found by Costantini to have been made by plaintiff between the hours of 9:00 p. m. and closing.

14. Revenue Agent Costantini's inclusion of all sales made while shows were in progress and during intervals between shows had foundation in fact and was not arbitrary or unreasonable.

15. Plaintiff has failed to establish the dollar amount of sales made to persons who came into the cafe during an interval between floor shows and left prior to the commencement of the next show.

16. For the year 1954 plaintiff paid cabaret tax in the amount of $3,603.22 on sales totalling $15,606.80. For the year 1955 plaintiff paid cabaret tax in the amount of $3,094.85 on sales totalling $12,165.25. In each of the years in question, taxpayer reported and paid tax only on sales made while floor shows were in progress.

17. The amount of cabaret tax paid by taxpayer for the year 1953 does not appear in the record but the Court finds that taxpayer did not include, as taxable, or pay tax on any sales other than those made while floor shows were in progress. For the year 1953 sales made by taxpayer during the intervals between floor shows totalled $31,540.45.

18. There is an essential unity between the service of refreshments during the intervals between floor shows and the enjoyment of the entertainment provided by plaintiff.

19. There is no essential unity between the service of refreshments after the conclusion of the last floor show and the enjoyment of the entertainment provided by plaintiff.

20. Cabaret taxes were included in all refreshments sold by plaintiff between the hours of 9:00 p. m. and closing and were collected from patrons of Carroll's Cafe.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties and of the subject matter.

2. There is an essential unity between service of refreshments during intervals between floor shows and enjoyment of the entertainment presented by plaintiff, subjecting sales of refreshments during intervals between floor shows to cabaret tax.

3. There is no essential unity between service of refreshments following the conclusion of the last floor show and enjoyment of entertainment presented by plaintiff. Sales made following the conclusion of the last floor show are not subject to cabaret tax.

4. Plaintiff has not established her right to recover any portion of the fund deposited with defendant and applied by defendant to additional cabaret taxes, statutory costs, and interest for the years 1953, 1954 and 1955.

5. Plaintiff has no standing to recover the amounts paid for cabaret taxes since plaintiff has not complied with the requirements of Section 6416(a) of the Internal Revenue Code of 1954.

6. Defendant is entitled to judgment on plaintiff's complaint.

7. Defendant is entitled to judgment on its counterclaim only for deficiencies in tax for the years 1953, 1954 and 1955 for sales made during floor shows and during intervals between floor shows.

## DISCUSSION

Plaintiff is seeking to recover a fund deposited with defendant and applied by defendant to additional assessments of cabaret taxes for the years 1953, 1954 and 1955. Section 4231 of the Internal Revenue Code provides:

"There is hereby imposed:

\* \* \* \* \* \*

"(6) Cabarets.—a tax equivalent to 20 percent of all amounts paid for

admission, refreshment, service, or merchandise, at any roof garden, cabaret, or other similar place furnishing a public performance for profit, by or for any patron or guest who is entitled to be present during any portion of such performance. The tax imposed under this paragraph shall be returned and paid by the person receiving such payments. * * * "

Section 4232 sets forth the following definition:

"(b) *Roof garden, cabaret or other similar place.*—The term 'roof garden, cabaret, or other similar place,' as used in this chapter, shall include any room in any hotel, restaurant, hall, or other public place where music and dancing privileges or any other entertainment, except instrumental or mechanical music alone, are afforded the patrons in connection with the serving or selling of food, refreshment, or merchandise. * * * "

For the years in question, plaintiff reported and paid cabaret tax only on refreshments served during the periods when floor shows were actually in progress. She maintained records showing the volume of sales made during the intervals between floor shows but she neither reported nor paid cabaret tax on sales made during such intervals. The defendant included all such sales in arriving at its assessment.

Plaintiff must stand or fall on her legal position that cabaret taxes are assessable only for refreshments served *while taxable entertainment is being performed.* She contends that sales made prior to the commencement of the first floor show, during the intervals between shows, and after the conclusion of the last floor show are not subject to tax.

In determining whether plaintiff is entitled to recover it is not necessary to go beyond the taxability of sales made during the intervals between floor shows, for, considering only the sales made during the time floor shows were actually in progress and sales made during the intervals between floor shows, plaintiff's liability for additional cabaret taxes exceeds the amount deposited with defendant and for which she seeks recovery.

It is clear from the testimony that the cabaret tax was included in the price of refreshments served in plaintiff's place of business. Treasury Regulation 43 (1941 ed.) Section 101.13(d) (3) sets forth the formula for determining the amount of tax where it is included in the price of the refreshments. The tax is computed by dividing the gross receipts by 120 and multiplying the result by 20. For the years 1954 and 1955, using the figures compiled from plaintiff's own cash register records, the sales during the floor shows and the intervals between floor shows totalled $46,416.55 for 1954; and $36,576.10 for 1955. Applying the formula mentioned above, the tax (without interest, statutory costs and lien fees) for 1954 amounts to $7,736.00 and for 1955, $6,096.00, or a total of $13,382.00 for the years 1954 and 1955. In those years plaintiff paid cabaret taxes amounting only to a total of $6,698.07, leaving a deficiency of $7,133.93. In addition, it is clear from the evidence that plaintiff did not report and pay cabaret tax on sales totalling $31,540.45 made during the intervals between floor shows in the year 1953. The basic tax on that volume of sales is $5,256.80. The deficiency for basic tax alone, therefore, for the years 1953, 1954 and 1955 totals $12,390.73, an amount which exceeds the deposit for which plaintiff seeks recovery.

Plaintiff frankly concedes that no case holds directly that sales made during intervals between floor shows are not subject to tax. She argues that such a holding is implied in United States v. Eddy Brothers, Inc., 291 F.2d 529 (8th Cir., 1961) ; Bush's, Inc. v. United States, 277 F.2d 780 (7th Cir., 1960) ; United States v. Hover, 268 F.2d 657 (9th Cir., 1959). With this we cannot agree. Her contention collides head-on with the wording of Section 4231. Had Congress intended that the tax be imposed only

on sales made while the taxable entertainment was actually being performed, it would have been a very simple thing to do. Instead, Congress clearly, in our view, intended, and expressly stated, that the tax be imposed on all sales to any *person* who was present or who was *entitled* to be present during any portion of the performance of such entertainment.

Revenue Ruling 54–487, 1954 (2 Cum. Bull. 376–377), implementing Section 4231 provides as follows:

"The cabaret tax applies to all amounts paid for food, refreshment, service, or merchandise by patrons or guests who are present during any part of the entertainment, even though such patrons or guests make payment for the food, refreshment, service or merchandise prior to the time the entertainment starts. For the tax to apply, it is not necessary that such patrons or guests be able to witness the entertainment, and partake of food or refreshments at the same time.

"It is held that payments for food, refreshment, service, or merchandise made prior to the beginning of the entertainment in a cabaret, roof garden or other similar place are subject to the cabaret tax imposed by section 1700(e) of the Code, where the patrons or guests by or for whom such amounts are paid remain for any portion of the entertainment afforded. However, the tax does not apply to payments made by or for patrons or guests who leave the establishment prior to the beginning of the entertainment, or who enter and leave during an intermission period, or who enter after the entertainment has ceased."

■ From the wording of the Statute, the Revenue Ruling and from the cases cited by both the defendant and the plaintiff, one clear rule seems to emerge, that enunciated in La Jolla Casa de Manana v. Riddell, 106 F.Supp. 132 (D.C.S.D.Calif.1952), aff'd 206 F.2d 925 (9th Cir., 1953):

"It is clear that Congress envisioned an essential unity between the service of refreshment and the enjoyment of the entertainment. The reason for this unity is the reason for the tax itself: that the payment for the refreshment should operate to entitle the patron to view the entertainment, or participate in the dancing, as the case may be."

■ Unity between the service of refreshments and the enjoyment of entertainment serves as the judicial touchstone in determining the validity of cabaret tax assessments. United States v. Eddy Brothers, Inc., supra; United States v. Hover, supra; Rokicki v. United States, 164 F.Supp. 610 (D.C.N.D. Ohio 1958). Each case must be determined on its own facts. Hover v. United States, 158 F.Supp. 179, 183 (D.C.S.D. Cal.1958), aff'd 268 F.2d 657 (9th Cir., 1959); Rokicki v. United States, supra, 164 F.Supp. at page 614. From the facts of the case before me there is no question but that such unity exists as to sales made during the intervals between floor shows. The implication, which plaintiff asserts is present in the cases, escapes the Court. The implication, if any, to be gleaned from those cases, is that once taxable entertainment commences the establishment at that point becomes a "cabaret". That character remains until the termination of taxable entertainment. There is nothing in the cases to support the contention that once taxable entertainment has started, a lull, whether designated intermission or interval, in the entertainment terminates the "cabaret" status of the establishment.

In Bush's, Inc., supra, where a singer and musicians performed between midnight and 3:00 a. m. the Court held sales during the entire three hour period taxable. I cannot believe that, in that case, the singer performed continuously for the three hour period. To accept plaintiff's contention would provide too

convenient a route for defeating the cabaret tax entirely. It would be a simple matter to arrange intervals in the entertainment, make sales only during those intervals and none while entertainment is actually being performed, and completely avoid tax liability. Once Carroll's Cafe assumed "cabaret" status, at least at the start of the first floor show, that status continued until the termination of the last floor show.

■ Since, in my view, the requisite unity exists, defendant was justified in including the sales made during those intervals between shows and defendant's assessment, to that extent, enjoyed the presumption of correctness. That being so, the burden was on plaintiff [Hoffman v. Commissioner, 298 F.2d 784 (3rd Cir., 1962)] to establish the volume of sales made to persons who entered the establishment during an interval between shows and left before the commencement of the next floor show. This plaintiff failed to do, leaving plaintiff with a liability for deficiencies, as above demonstrated, in an amount exceeding that for which she seeks recovery. She cannot, therefore, recover on her complaint and defendant is entitled to judgment on its counterclaim for the amount so demonstrated to be deficient. We will grant leave to the defendant to make the necessary computations, consistent with the findings and conclusions herein set forth, to establish the amount of tax, statutory costs and interest due it for sales made for the years 1953, 1954 and 1955 during floor shows and the intervals between shows, giving due credit, of course, for the amounts of taxes paid by plaintiff for those years.

■ There is an additional basis for denying plaintiff relief. Under Section 6416 of the Internal Revenue Code of 1954, no refund for overpayment may be granted unless the taxpayer proves that he has not included the tax in the price of the article or that he has repaid the amount of the tax to the purchaser or that he has filed with the Secretary the written consent of the purchaser. Plaintiff included the tax in the price of the refreshments and the tax was paid by plaintiff's patrons. Plaintiff had not shown repayment of the amount of the tax to the patrons nor their consent to plaintiff's recovery of the taxes. Plaintiff has no standing, therefore, under the provisions of Section 6416 to recover the amounts paid for cabaret tax.

■ In its counterclaim, defendant seeks judgment for cabaret taxes on all sales made between 9:00 p. m. and the time of closing. There is ample factual support in the record for the conclusion arrived at by the defendant as to the volume of sales made by plaintiff between the hours of 9:00 p. m. and closing for the years 1953, 1954 and 1955. Unfortunately for the defendant, however, it included in that computation sales made after the conclusion of the last floor show, a period for which the tax is not properly assessable. Bush's, Inc. v. United States, supra; La Jolla Casa de Manana v. Riddell, supra. That inclusion destroyed what otherwise would have established the presumption of correctness of the defendant's assessment for the business transacted by plaintiff during those hours. There is left to the Court, therefore, no basis for a finding as to the volume of sales made by plaintiff between 9:00 p. m., and the commencement of the first floor show. If there were warrant in the record for segregating the sales between 9:00 p. m. and the commencement of the first floor show from sales made after the conclusion of the last floor show, I would be confronted with determining the issue of whether or not the sales between 9:00 p. m. and the commencement of the first floor show were subject to cabaret tax. Since, however, the record affords no basis upon which I could segregate the dollar volume of sales made during that pre-first floor show period, it becomes unnecessary to determine whether those sales are taxable at all. I am convinced beyond doubt that sales in a significant amount were made during that period but I could only guess as to the amount. The defendant, to that extent, has failed in its proof.

ORDER

AND NOW, this 19th day of June, 1962, it is ORDERED:

1. Judgment be entered for defendant on plaintiff's complaint;

2. As to defendant's counterclaim, the parties shall submit an appropriate form of order granting judgment to the defendant in an amount computed consistent with this opinion.