George E. NELSON and W. H. Jones, trading and doing business as Mardi Gras Lounge, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 3798-65.

United States District Court
S. D. Alabama, S. D.

Sept. 20, 1966.

Vincent F. Kilborn, Kilborn, Darby & Kilborn, Mobile, Ala., for plaintiffs.

Vernol R. Jansen, Jr., U. S. Atty., Mobile, Ala., and Hubert Doster, Atty., Tax Division, Department of Justice, Washington, D. C., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

DANIEL HOLCOMBE THOMAS, Chief Judge.

### Statement of the Case

Plaintiffs are partners doing business as the Mardi Gras Lounge, a cocktail lounge which permits dancing to phonograph records during a portion of each business day. The plaintiffs timely filed

a cabaret tax return for the years 1960 and 1961. This return contained plaintiffs' statement as to the amount of business transacted for which they were liable for payment of this cabaret tax. The government questioned this return and made an assessment of additional tax owed. The plaintiffs have paid the assessment and now bring this suit for refund of the alleged deficiency assessment.

## Findings of Fact

(1) Plaintiffs, George E. Nelson and W. H. Jones, are partners in the operation of the Mardi Gras Lounge.

(2) The Mardi Gras Lounge opened about 2:00 p. m. daily, and remained opened into the hours of early morning during the years 1960 and 1961.

(3) At 8:30 p. m., the Lounge permitted dancing and at that time, the Lounge became liable for the payment of a cabaret tax.

(4) The tapes on the cash register were supposed to be rolled at 8:30 p. m. so that a few inches of blank space would appear on the tape. This space was designed to indicate the commencement of cabaret status.

(5) At the close of business, the evening receipts and the cash register tape were placed in a sealed envelope and the envelope was placed in a safe.

(6) The envelope was then taken to the bookkeeper in the morning. Relying on the entries made after the blank space on the tape appeared, she would make entries of total sales while the lounge was on cabaret status.

(7) From April 23, 1963, to May 21, 1963, agents of the Internal Revenue Service conducted a period of observation, as they had suspected that the taxpayer had not fully reported his cabaret tax liability in preceding years.

(8) The Internal Revenue Service asked the plaintiffs for records indicative of past sales, and these were furnished. These records contained a breakdown of cabaret and non-cabaret sale.

(9) The cash register tapes for the years 1960 and 1961 led the Internal Revenue Service to conclude that sales at increased prices had occurred prior to the time the tapes were rolled.

(10) The plaintiffs increased their prices at 8:30 p. m. nightly.

(11) Upon concluding that the full cabaret tax liability had not been reported in the past, the government devised a formula based upon their observations in 1963 and tapes from 1960 and 1961. The government found that 65.20% of the total sales for the last three quarters of 1960 and 60.20% of the total sales for 1961 were subject to the cabaret tax, and an assessment was made based upon such calculations.

(12) The taxpayer paid the assessment and filed suit in this court for a refund.

## Conclusions of Law

This action is instituted pursuant to Title 28, Section 1346(a) (1), United States Code, wherein federal district courts are given jurisdiction of claims against the government for refund of taxes allegedly erroneously imposed.

The tax which is assessed herein is a cabaret tax as imposed in Title 26, Section 4231(6), United States Code, and defined in Section 4232(b). There is no dispute over the fact that the Mardi Gras Lounge was subject to cabaret tax liability but, rather, the amount of such liability is the sole issue.

■■ The Commissioner has made a determination of the tax liability and the taxpayer has the burden of showing the invalidity of that determination. Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623 (1935); Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212 (1933); C. I. R. v. Smith, 285 F.2d 91 (5th Cir. 1960); Brooks v. United States, 280 F.2d 370 (5th Cir. 1960). Further, the commissioner has authority, under certain circumstances, to ascertain an approximate liability. Cohan v. Commissioner of Internal Revenue, 39 F.2d 540 (2d Cir. 1930). In Argyrides v. Glotzbach, 60–2 USTC par.

15,312, the court upheld as reasonable the commissioner's determination of cabaret tax liability in view of the fact that plaintiffs did not maintain adequate records from which such a determination could otherwise be made. The plaintiff here has maintained records which adequately reflect a breakdown between those periods which were subject to cabaret tax liability and those that were not so subject to tax. In Jennings v. United States, 177 F.Supp. 597 (E.D. Va.1959), the government made its assessment on the basis of test-period scrutiny. The court refused to accept the government's determination of tax liability and cited the fact that the taxpayer's business during the time of the test period was not the same as the business during the period in which the government sought to levy an assessment. In Iroquois Gardens, Inc. v. United States, 197 F.Supp. 94 (W.D.Ky. 1961), the government rejected the computations of the taxpayer and, after examination of the records of the taxpayer, made an assessment of additional cabaret tax owed. The court rejected the determination of the government and, citing United States v. Hover, 268 F.2d 657 (9th Cir. 1959), stated that the presumption of validity that attaches to the determination may be rebutted by a showing by the plaintiff that it was arbitrary and erroneous.

■ This court finds that a similar situation exists in the case at bar. The records of the taxpayer adequately reflect a breakdown between cabaret and non-cabaret sales. There was evidence that the plaintiffs' volume of business was not constant. The government had become suspicious of the plaintiffs, as the testimony clearly indicated. An examination of their activities some two years later led the government to conclude that an underpayment of cabaret tax had been made. The court is not satisfied that this suspicion was without basis; however, the court is satisfied that the thirty-day test period conducted in 1963 and random cash register tapes are an insufficient basis for the formation of a determination of tax liability in 1960 and 1961. The records of the taxpayer, as kept during the years in question, are reasonably complete and bear out the plaintiffs' estimate of cabaret tax liability. The government therefore appears to quarrel with their accuracy. However justified this may be, the court cannot accept the determination of the commissioner and rejects it as arbitrary and erroneous. The government challenges the accuracy of these tapes and adopts its own method of interpreting them. The evidence showed that the government saw the commencement of entries at higher prices as the time when the taxpayer became liable for the cabaret tax. The government rejected the time when the tapes appeared to have been rolled as the actual time for imposition of the tax.

The testimony showed that customers were sometimes charged different prices for the same article, with a tendency toward favoring regular customers. While the going rate of non-premium beer may have been 40¢ or 45¢, a new prosperous appearing customer may have been charged 50¢ or 55¢ for the same article, this having no relation to the time when the cabaret tax became applicable. The evidence also showed that even to regular customers, the price of premium beer was always higher than that of non-premium beer. The cash register could earmark sales in three categories: beer, whiskey and miscellaneous.

Under the government's theory, on which it assessed the tax, it assumed that when a 50¢ article appeared under "beer" prior to the time the tape was rolled, that it was a beer sold after 8:30 and after the price had gone up from 40¢ to 50¢. The fallacy in this is that it could just as easily have been a premium beer which always did sell at 50¢ prior to 8:30. Under the government's theory, it also assumed that when a 90¢ article appeared prior to the time the tape was rolled, that it was a drink on which the price increased from 80¢ to 90¢ at 8:30, and consequently the drink

was sold before the tape was rolled, but after 8:30 p. m. The fallacy in this is, as the bartender testified, he infrequently rang up two 45¢ beers as one 90¢ article.

The testimony showed the simple fact that the existence of a higher priced entry did not necessarily give rise to a presumption that the more expensive, post 8:30 p. m. pricing policies were in effect.[1] The higher entry, which the government contended was indicative of a post 8:30 price for a single beer, could well have been a pre 8:30 imported beer. Such basis as this for the government's methods of computation compel the court to reject it as arbitrary and erroneously founded upon unreasonable conjecture.

Judgment will be entered for the plaintiffs.