**Bessie ROKICKI, dba Ka-See's Nite Club, 4014 Lagrange Street, Toledo, Ohio, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 7844.**

United States District Court
N. D. Ohio, W. D.
Aug. 29, 1958.

John Celusta, Toledo, Ohio, for plaintiff.

Sumner Canary, U. S. Atty., Cleveland, Ohio, Richard M. Colasurd, Asst. U. S.

Atty., Toledo, Ohio, Peter J. Donahue, Dept. of Justice, Washington, D. C., for defendant.

KLOEB, District Judge.

This is a suit for the recovery of cabaret tax in the amount of $1,853.31, assessed under the provisions of Section 1700 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 1700, for the taxable period July 1, 1953 through September 30, 1953.

The case was tried to the Court on April 22, 1958, and briefs were thereafter prepared by counsel and submitted to the Court.

At the trial of the case, an agreed statement of facts was submitted and these stipulations are as follows:

"1. The plaintiff, Bessie Rokicki, is engaged in the business of operating a cabaret known as Ka-See's Nite Club, located at 4014 Lagrange Street, Toledo, Ohio.

"2. Ka-See's Nite Club features entertainment in the form of floor shows, consisting of famous singers, dancers, novelty acts, etc., and dancing for the benefit of its customers and furnishes dinners and refreshments, in the form of liquor, beer and wine.

"3. Ka-See's Nite Club is a cabaret or other similar place of entertainment, between 9:15 p. m. and closing time, furnishing a public performance for profit for the benefit of its customers who are entitled to be present during any portion of the performance.

"4. Ka-See's Nite Club occupies one (1) large room in which are a bar, dance-floor—elevated and used as a stage, table area for customers for eating and drinking.

"5. From July 1, 1953, until September 30, 1953, Ka-See's Nite Club was operated in the following manner: The business was opened at 3:30 p. m. From 3:30 p. m. until 7:30 p. m. no admission to the Club was charged. From 7:30 p. m. until the entertainment ceased an admission or cover charge of $0.50 during the week, and $1.00 on Saturdays, was in effect. At approximately 9:15 p. m. an orchestra began playing and the patrons were permitted to dance. At approximately 10:00 p. m. the first of two or three floor shows began. Food and drink, which were the primary source of revenue, were served continuously during the Club's hours of operation. After 9:15 p. m. the prices of food and drink were increased by 20 (%) per cent. Entertainment and the orchestra's playing ceased at approximately 1:30 a. m., but the Club remained open approximately one hour more, permitting its customers to dance to a record machine.

"6. The taxpayer divided his total sales into two parts, an alleged nontaxable period from 3:30 p. m. to 9:15 p. m., and a taxable period between 9:15 p. m. and closing.

"7. The taxpayer at 9:15 p. m. each evening rang off, on the cash registers in operation, all sales prior to that time. Such totals were considered nontaxable and no tax was paid on these amounts. At closing time the taxpayer rang off the registers all sales subsequent to 9:15 p. m. and collected and paid a tax on those receipts.

"8. Service to the guest is handled in several ways: First, the bar trade pays when served and a register receipt for the transaction is given. Secondly, orders from table guests are obtained by waitresses who fill the orders at the bar, pay the head cashier and subsequently collect payment from the table guest, furnishing the guest with a receipt of the transaction.

"9. The type of cash register used by the taxpayer's place of business furnishes a small receipt for each sale rung in the machine. No duplicate receipt is retained. However, the register's accumulated

total may be rung off on a small register receipt for any desired ring-off period.

"10. The records of Ka-See's Nite Club failed to separate the sales prior to 9:15 p. m. into those subsequent to 7:30 p. m. and those prior to 7:30 p. m.

"11. An agent of the Internal Revenue Service conducted a survey at Ka-See's Nite Club on July 15, 1953, July 16, 1953, July 20, 1953, July 24, 1953, and August 4, 1953, to determine the amounts of sales between 7:30 p. m. and 9:15 p. m. This survey consisted of the following: A physical count of the persons present at 7:30 p. m., a physical count of the persons entering between 7:30 and 9:15 p. m. and a physical count of the persons leaving between 7:30 and 9:15 p. m. The internal revenue agent also rang off the various cash registers at 7:30 p. m. when admission charges were commenced, obtaining the total sales made prior to that time. At the commencement of orchestra music the agents again rang off the registers and determined the amount and number of sales between 7:30 and 9:15 p. m.

"12. An additional survey was taken, and an average of the two surveys showed that 95.84% percent of the people entering the night club between 7:30 p. m. and 9:15 p. m. remained for the subsequent entertainment. They also showed that an average 74.13 per cent of sales prior to 9:15 o'clock were made between 7:30 p. m. and 9:15 p. m. All sales made to entertainers and employees were excluded from the computations of the agents. No sales made prior to 7:30 p. m. were included despite the fact that persons present prior to 7:30 p. m. remained for the entertainment.

"13. The deficiency of $1,853.31 —which is the amount of deficiency paid, and sued for herein—assessed under the provisions of Section 1700 (e) of the Internal Revenue Code of 1939 for the period July 1, 1953 to September 30, 1953, was based on the survey of sales and the physical count of customers conducted by the revenue agent.

"14. All formal requisites needed to permit the filing of this suit for refund have been complied with by the plaintiff within due time."

The precise question involved is whether or not refreshment sales made prior to the commencement of entertainment to patrons who remain for the entertainment are subject to the cabaret tax imposed by the section in question.

The section of law and the Treasury regulations and rulings pertinent to the issue are as follows:

Section 1700(e)(1) of the Internal Revenue Code of 1939 reads in part as follows:

"A tax equivalent to * * * per centum of all amounts paid for admission, refreshment, service, or merchandise, at any roof garden, cabaret, or other similar place furnishing a public performance for profit, by or for any patron or guest who is entitled to be present during any portion of such performance."

Treasury Regulation 43 (1941 ed.): Sec. 101.13, reads in part as follows:

"The tax imposed by section 1700 (e), as amended, applies to all amounts paid for admission, refreshment, service, and merchandise, at any roof garden, cabaret, or other similar place furnishing a public performance for profit, by or for any patron or guest who is entitled to be present during any portion of such performance. The tax is at the rate of 20 per cent of the total amount so paid.

"Charges collected prior to commencement of a performance are not taxable with respect to such performance, if the patron does not remain for any part of the performance."

Mim. 5669, 1944 Cum.Bull. 647, 648, reads as follows:

"Inasmuch as the cabaret tax is specifically imposed on all amounts paid for admission, refreshment, service and merchandise by or for any patron or guest who is entitled to be present during any portion of the dancing or entertainment, it must be held that the payments for admission, refreshment, service, and merchandise made prior to the commencement of the dancing or other entertainment are subject to the cabaret tax in all cases where the patrons or guests by or for whom such amounts are paid remain for any portion of the period of dancing or entertainment."

Rev.Rul. 54–487, 1954–2 Cum.Bull. 376, 377, reads as follows:

"The cabaret tax applies to all amounts paid for food, refreshment, service, or merchandise by patrons or guests who are present during any part of the entertainment, even though such patrons or guests make payment for the food, refreshment, service, or merchandise prior to the time the entertainment starts. For the tax to apply, it is not necessary that such patrons or guests be able to witness the entertainment, and partake of food or refreshments at the same time.

"It is held that payments for food, refreshment, service, or merchandise made prior to the beginning of the entertainment in a cabaret, roof garden or other similar place are subject to the cabaret tax imposed by section 1700(e) of the Code, where the patrons or guests by or for whom such amounts are paid remain for any portion of the entertainment afforded. However, the tax does not apply to payments made by or for patrons or guests who leave the establishment prior to the beginning of the entertainment, or who enter and leave during an intermission period, or who enter after the entertainment has ceased."

Plaintiff imposed an admission or so-called cover charge starting at 7:30 p. m. and at 9:00 p. m. an orchestra began to play for the benefit of those patrons who wished to avail themselves of the dancing privileges, and at 10:00 p. m. the first of two or three floor shows was provided for the entertainment of the customers.

Plaintiff paid the cabaret tax on the admission charge, but did not pay the tax on sales made to patrons between 7:30 p. m. and 9:00 p. m.

It is the contention of defendant that all payments for refreshments, service and merchandise made by a patron or guest prior to the entertainment furnished by the cabaret between the hours of 7:30 p. m. and 9:00 p. m. are subject to the tax, if the admission payments entitled the guest to be present at the entertainment and if he, in fact, did remain for the entertainment.

We have examined the statute, the regulations and interpretations and certain judicial decisions, and we conclude that the position of the defendant is reasonable and proper and that the complaint should, therefore, be dismissed and judgment entered for defendant.

We concur in the conclusion of the Court arrived at in the case of La Jolla Casa de Manana v. Riddell, D.C., 106 F. Supp. 132, decided June 27, 1952, and affirmed in 9 Cir., 206 F.2d 925. We believe that the District Court was correct in refusing the application of the tax on sales made to customers after the closing of the dancing and entertainment at midnight. However, we call attention particularly to paragraph three of the opinion of the Court at page 135 of 106 F. Supp., which reads in part as follows:

"It is clear that Congress envisioned an essential unity between the service of refreshment and the enjoyment of the entertainment. * * *".

The case of Kantor v. United States, decided September 11, 1956, and found in 154 F.Supp., at page 58, is in point, and with that decision we agree.

We agree also with the decision in the case of Godwin v. Brown, 8 Cir., 1957, 249 F.2d 356, which appears to be in point.

We agree also with the reasoning in the case of Hover v. United States, D.C., 158 F.Supp. 179, decided January 3, 1958, and call attention particularly to paragraph three on page 183 thereof, which reads in part as follows:

" * * * The only sensible and practical approach to the problem is to consider the wording of the statute in the light of each factual situation as it is presented keeping always in mind the objectives and purposes the statute sought to achieve. * * *".

Judgment is awarded defendant and the complaint is dismissed.