**HILLCREST ARMS APARTMENTS, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. No. 8003.

United States District Court
N. D. Ohio, W. D.

Sept. 24, 1959.

Shumaker, Loop & Kendrick, John J. Kendrick, Toledo, Ohio, for plaintiff.

Russell E. Ake, U. S. Atty., Cleveland, Ohio, Richard M. Colasurd, Asst. U. S. Atty., Toledo, Ohio, George T. Rita, Atty., Dept of Justice, Washington, D. C., for defendant.

KLOEB, Chief Judge.

This is a suit for the recovery of cabaret taxes, plus interest, assessed against plaintiff under Section 1700(e) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 1700(e), and Section 4231(6) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 4231(6), for the period June 1, 1952 to March 31, 1956, being approximately three years and ten months, and paid by plaintiff to the Director of Internal Revenue.

During the period involved, plaintiff maintained a dining room, cocktail lounge and bar known prior to October, 1954 as the Victorian Room and subsequent thereto as the Victorian Terrace. In this room dinners were served from 5:00 to 9:00 p. m. and from 7:00 to 9:00 p. m. the dinner guests were entertained with music. At about 9:00 to 9:20 p. m. a small dance floor was cleared and what was known as the supper hour began with music and dancing, which continued until about midnight. Therefore, from about 9:00 p. m. to midnight the Victorian Room or Victorian Terrace qualified as a cabaret within the meaning of Section 1700(e)(1) of the Internal Revenue Code of 1939 and Sections 4231(6) and 4232 (b) of the Internal Revenue Code of 1954.

During the period in question, and at the times required by law, plaintiff filed with the Internal Revenue office its Federal excise tax returns and remitted amounts of cabaret tax collected from its guests in the total amount of $86,089.34.

On July 31, 1956, the District Director notified the plaintiff that additional cabaret taxes in the amount of $33,764.23, with interest, were due for the period June 1, 1952 through March 31, 1956. During the entire period under investigation there appears to be no question of

fraud involved and the taxpayer returned its computed excise taxes on a basis that it believed to be proper, all under the direction of a resident auditor who was an employee of Horvath and Horvath, a nationally known firm of hotel accountants. Recognizing the administrative difficulties that strict enforcement of the statute would entail, the taxpayer appears to have taken all reasonable precautions to assess, collect and remit to the Government the cabaret taxes incurred, assessed, collected and paid during the period involved.

This case was tried to the Court on Thursday and Friday, May 14 and 15, 1959, and thereafter briefs were prepared and filed by the respective parties.

The classic question of whether or not purchases of food and drink by the dinner patrons, prior to the hour when the room became a cabaret, are taxable when such patrons remain after the close of the dinner hour and through a portion or all of the cabaret period does not appear to be the direct problem here. It is taxpayer's position that, as regards such patrons, its waitresses were instructed to and did add the 20% cabaret tax and charged therefor.

It is the Government's contention that over a period of eleven evenings, to wit, April 13, May 18, May 24, June 5, 6, 12, 18, 19, 20, 21 and 22, it stationed a Revenue Agent, a Mr. Robert E. Watson, in the room for a period ranging from 8:45 in the evening to about 10:00 or 10:30, and that Mr. Watson, upon arrival, counted the number of guests in the room, checked with the cashier on the guest checks that were in her possession, and that about 9:00 to 9:20 each evening he again counted the number of guests, presumably after the dinner guests had left and the cabaret guests had appeared, and that he found that approximately one-third or more of the dinner guests remained over for the dancing and were not charged the 20% tax. His observations were that the amounts of the checks related to those persons who stayed on after the entertainment commenced but who paid no Federal cabaret tax, totaled or were in the ratio of the amount paid by the taxpayer in the percentage of 39.22%. The Government then takes this figure of 39.22% and applies it retroactively to the period in question, to wit, June 1, 1952 to March 31, 1956, and assesses the defendant the additional taxes in the amount of $33,764.23, with interest. In other words, the Government takes the cabaret tax previously paid by the taxpayer during the period involved and increases this tax by a percentage of 39.22% and comes up with additional taxes claimed and subsequently paid by the taxpayer.

At the opening of the trial, a stipulation of facts subscribed to by the parties was filed. This stipulation of facts reads in part as follows:

"2. Plaintiff is a corporation organized under the laws of Ohio with its principal offices at 241–16th, Street, Toledo, Ohio. During the period involved in this case, to-wit, June 1, 1952 to March 31, 1956, Plaintiff was engaged in the business of operating the Hillcrest Hotel, located at 241–16th Street in Toledo, Ohio.

"3. In said Hillcrest Hotel, Plaintiff, during the period involved herein, maintained a dining room, cocktail lounge and bar, known sometimes as the Victorian Terrace and at other times as the Victorian Room.

"4. At certain hours on week-day nights by reason of the fact that music for dancing was furnished by an orchestra in the Victorian Terrace or Victorian Room, the operation of said room by Plaintiff qualified as the operation of a cabaret within the meaning of Section 1700 (e)(1) of the Internal Revenue Code of 1939 and Sections 4231(6) and 4232(b) of the Internal Revenue Code of 1954.

"5. During the period June 1, 1952 to March 31, 1956, at the times required by law, Plaintiff filed with the proper United States Internal

Revenue offices in Toledo, Ohio, its returns of Federal Excise Taxes showing thereon the amount of Federal Excise Taxes or cabaret taxes collected by it from its guests and plaintiff remitted to the proper offices of the Internal Revenue Service the amounts of such excise or cabaret taxes so collected by it from its guests.

"6. During the period June 1, 1952 to March 31, 1956, Plaintiff collected from its guests such cabaret taxes in the total amount of $86,089.34, and at the times required by law remitted the said amounts so collected by it to the proper offices of the Internal Revenue Service.

"7. On or about July 31, 1956, the District Director of Internal Revenue, Toledo, Ohio, formally notified Plaintiff that additional cabaret taxes for the period June 1, 1952 to March 31, 1956 were due from Plaintiff in the amount of $33,764.23 and payment was thereupon demanded of said alleged deficiency, together with interest thereon in the amount of $4,166.07.

"8. On August 14, 1956, Plaintiff paid under protest to the District Director of Internal Revenue, Toledo, Ohio, said alleged deficiency of cabaret taxes in the amount of $33,-764.23, together with the interest thereon of $4,166.07, or a total amount of $37,930.30.

"9. On October 18, 1956, Plaintiff filed with the District Director of Internal Revenue, Toledo, Ohio, its claim for the refund of the $33,764.-23 excise or cabaret taxes so paid by it on August 14, 1956, together with the interest paid thereon of $4,166.-07, and demanded the payment of interest thereon according to law. A true copy of said claim for refund is attached to the Amended Complaint herein, marked Exhibit A and made a part thereof.

"10. On February 18, 1957, the District Director of Internal Revenue, Toledo, Ohio, notified Plaintiff, according to law, that Plaintiff's said claim for refund so filed on October 18, 1956, was disallowed in its entirety."

At the conclusion of the trial, counsel for the Government made the following observation (R. 196): "The only question really now is, was this computation valid, etc."

On page 1 of the brief for the defendant, the question presented is restated as follows: "Whether the investigation of the Commissioner of Internal Revenue, which showed 39.22% of the taxable receipts of the taxpayer's cabaret for the years involved were not reported, pursuant to Section 1700(e) of the Revenue Code of 1939 and Section 4231 of the Internal Revenue Code of 1954, was based upon reasonable observation or, as contended by the taxpayer, was arbitrary and capricious".

We believe this to be the only question that we are here called upon to solve and, therefore, pass all other questions that were considered in the cases of La Jolla Casa de Manana v. Riddell, D.C.Cal.1952, 106 F.Supp. 132, affirmed 9 Cir., 1953, 206 F.2d 925; Bush's, Inc. v. United States, D.C.Ill., 171 F.Supp. 681; United States v. Hover, 9 Cir., 268 F.2d 657; In the Matter of the Alpine Village, Inc., Bankrupt, D.C.N.D.Ohio E.D., 1958, 58–2 USTC, par. 15,182; and Rokicki v. United States, D.C.N.D.Ohio, 164 F.Supp. 610, a case decided by this Court in the year 1958.

The Victorian Room prior to its remodeling and renovation in the summer of 1954, when it was closed from July 10 to October 3, accommodated about 150 people. After remodeling, this room, then known as the Victorian Terrace, was increased to accommodate up to 250 people.

The Revenue Agent, Mr. Robert E. Watson, appeared for the purpose of his checking and computations on April 13, May 18, May 24, June 5 and 6, but in his testimony he seems to entertain substantial doubt as to the accuracy and the

results of his work during these five evenings (R. 24, 25, 26 and 27). He confesses that he had not become sufficiently versed with the operation of plaintiff's business to enable him to devise a satisfactory method of checking, and that he did not become so sufficiently versed until about June 12. Therefore, we find from the record that the observations upon which he places reliance were made during the evenings of June 12, 18, 19, 20, 21 and 22, a total of six evenings; that these were week-day evenings, not including a Saturday when business was very heavy and the class of patrons was somewhat different. During this period of time we gather from his testimony that he began work about 8:45 p. m. and remained on the average for approximately an hour and a half to two hours. In other words, his conclusions are based upon observations, head counts and a certain checking of guest checks in the hands of the cashier over a period of approximately ten hours, more or less. He states that, upon arrival at 8:45 p. m., he counted heads at the occupied tables and then went into the kitchen to the cashier and obtained certain guest checks, presumably those of the guests who were engaged in dinner; that, about 9:00 o'clock or shortly thereafter, and particularly after the dinner guests are presumed to have left, he again counted heads and through this system of operation he arrived at the formula that resulted in the 39.22% charge. He did not seek to apply this formula to the period of time covered by his investigation, to wit, April, May and June of 1956, and, therefore, the sufficiency, adequacy or correctness of his method of operation in connection with this period of time is not before this Court for determination. What the Agent did was apply this percentage retroactively to the period June 1, 1952 through March, 1956, without taking into consideration changed conditions of operation and changed physical conditions that might and undoubtedly did materially affect the situation.

The record conveys the undisputed information that the taxpayer followed a custom of destroying all guest checks, except those that were charged, after a period of six months, hence there are no records whereby the accuracy or the sufficiency of the application of the formula might be tested.

We seriously doubt the advisability of considering computations that were based upon a six day period of observation, covering a total of possibly ten hours of actual work performed by one man, and relying upon the results of that work, unsupported by documentary evidence, to produce a formula of taxation and apply it retroactively over a period of years that involved changed conditions.

The assessment of a lump sum tax and interest of approximately $37,930.30 is no small undertaking, and such an assessment should, in the interest of fairness, be approached with extreme care and certainty. There should be no speculation and assumptions such as, it appears to us, is undertaken here.

To answer the question posed, we are of the opinion that the tax agent performed his work to the best of his ability, considering the fact that one man, without assistance, was delegated to perform this work mainly through observation and counting, but that the computation as made should not be relied upon in retroactive application against the taxpayer.

The prayer of the plaintiff for judgment against the defendant in the sum of $37,930.30, together with interest thereon from August 14, 1956, is granted.

Plaintiff may prepare and within 15 days lodge with the Court findings of fact and conclusions of law drawn in accordance with this memorandum opinion. Defendant may within 15 days thereafter file its exceptions and suggested additions thereto.