**BUSH'S, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 3999.

United States District Court
E. D. Illinois.

March 16, 1959.

Baker, Kagy & Wagner, East St. Louis, Ill., for plaintiff.

Clifford M. Raemer, U. S. Atty., E. D. of Illinois, East St. Louis, Ill., for defendant.

JUERGENS, District Judge.

This action was instituted under the provisions of Section 1346(a)(1) of Title 28 United States Code, as amended, for refund of federal "cabaret" taxes and interest thereon. These taxes were imposed under the provisions of Section 1700(e) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 1700(e), and Section 4231 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 4231.

The plaintiff is a corporation organized and existing under and by virtue of the laws of the State of Illinois and has its principal place of business in East St. Louis, Illinois.

Prior to the institution of this action, plaintiff paid the taxes in dispute and thereafter duly filed with the District Director of Internal Revenue at Springfield, Illinois, its claim for refund which was denied. All administrative procedure preliminary to filing a suit in this Court has been complied with and all such administrative relief was exhausted prior to the filing of this action.

This cause was tried to the Court without a jury on August 4, 1958. Testimony was heard and thereafter the parties filed written briefs.

For some time prior to December 1, 1951, plaintiff Bush's Steak House, Inc. (hereinafter referred to as Bush) operated a dining room, bars and private dining rooms at 100 W. Broadway, East St. Louis, Illinois, first under the name of Bush's Steak House, Inc. and after March 16, 1953, as Bush's, Inc. The operation continued until 1957 when the establishment closed.

The operation was conducted in various rooms. One such room was located in the basement of the building, which consisted of a bar and was called the "Porthole". There was no entertainment of any kind in this room. There was no cabaret tax assessed against the operations conducted in this room and the operations therein are not in issue.

On the main floor of the building were located the kitchen, the main dining room, a private dining room and a bar, called the "Cloverleaf Bar". Activities carried on in the kitchen, main dining room and private dining room did not include taxable entertainment and cabaret taxes were not assessed against these operations. The Cloverleaf Bar was the scene of public performances and entertainment furnished by the plaintiff for the benefit of its guests and was admittedly subject to "cabaret" tax. The main dining room and the Cloverleaf Bar were separate and distinct rooms and the performances in the Cloverleaf Bar could not be witnessed by the plaintiff's customers in the main dining room.

On the second floor of the building a barroom, known as the Celebrity or Blue Room (hereinafter referred to as Celebrity Room) was located. The Celebrity Room was open to the general public only on Saturday night and if opened at other times was used only for private parties. The Saturday night activities were admittedly subject to cabaret tax and tax for these activities was paid in full.

Of the numerous rooms in the building occupied by the plaintiff, only two are concerned in this action; these are the Cloverleaf Bar and the Celebrity Room.

In the Cloverleaf Bar plaintiff furnished some type of entertainment each night with certain exceptions and these exceptions are not in dispute. From the time the bar was opened until midnight, when entertainment was furnished by the plaintiff, it was limited to non-taxable instrumental music. This entertainment started at varying times but always ended at midnight. It consisted of a piano player and an accordionist. It is not alleged that this type of entertainment subjected the plaintiff to the payment of a cabaret tax. At midnight each night and continuing until approximately 3:00 A.M. each morning, in addition to the above instruments a singer was employed for the entertainment of the plaintiff's customers.

No dancing or group singing, either organized, directed or sponsored by the plaintiff was conducted in the Cloverleaf Bar, nor was any master of ceremonies or an equivalent employed.

At or before 3:00 A.M. each day the singer went off duty and the entertainment thereafter consisted solely of nontaxable instrumental music, which latter type of entertainment continued until closing.

The only type of taxable entertainment presented by the plaintiff for the benefit of its customers in the Cloverleaf Bar was a vocalist between the hours of midnight and 3:00 A.M.

The Celebrity Room was open to the public, as stated above, only on Saturday night—this for the purpose of permitting dances on the premises. A singer was also sometimes engaged from about midnight to approximately 3:00 A.M. The only type of taxable entertainment presented by plaintiff in the Celebrity Room was dancing from midnight to 3:00 A.M. each Saturday night, and on occasion a vocalist was also employed during the same hours.

It is not disputed that the plaintiff was subject to payment of cabaret taxes during the period of 12:00 midnight and 3:00 A.M. daily in the Cloverleaf Bar and between 12:00 midnight and 3:00 A.M. on Saturday nights in the Celebrity Room.

The dispute as to the amount of tax due and payable arises out of the plaintiff's sales and service prior to midnight and after 3:00 A.M. to closing.

Plaintiff paid the required tax for sales and service between midnight and 3:00 A.M., which amount is not in dispute. Thereafter, the defendant through its agents assessed a deficient cabaret tax on 33⅓ per cent of the amount of the total sales made in the Cloverleaf Bar and Celebrity Room from 8:00 P.M. until the start of taxable entertainment, usually at midnight. This deficiency was assessed by the defendant based on the assertion of the defendant's agents that an estimated one-third of the persons who attended the Cloverleaf Bar and the Celebrity Room between 8:00 P.M. and 12:00 o'clock midnight also stayed for, and were entitled to participate in, the taxable entertainment which commenced at midnight. A deficiency assessment was also made on 50 per cent of the amount of the total sales made in the Cloverleaf Bar and the Celebrity Room from the end of the period of taxable entertainment until closing time. This assessment was made on the basis that an estimated one-half of the customers present and served during this period were also present and entitled to view the taxable entertainment, at least in part, during the hours of 12:00 midnight and 3:00 A.M.

Plaintiff objected to the deficiency assessment but later was officially advised of the agents' report and thereafter received a bill for the deficiency. Plaintiff then prepared and filed its claim for abatement and its protest which was disallowed. Thereafter, plaintiff paid the deficiency together with interest and within the required period of time filed its claim for refund as above indicated. The claim was disallowed and this suit was instituted.

In order to determine the amount of sales, plaintiff had established a system whereby it could determine the amount of sales during the period of 8:00 P.M. to midnight, midnight to 3:00 A.M. or the termination of taxable entertainment, and from 3:00 A.M. to closing.

At the trial the parties stipulated "That there is no dispute between the parties as to the amount of cabaret tax which the taxpayer paid upon receipts recorded during the period in which the taxpayer furnished entertainment, usually midnight until 3:00 A.M.; that the taxpayer paid the cabaret tax upon such receipts, and is not suing for recovery of such sum".

The tax here in controversy was imposed up to December 31, 1954, under the provisions of Section 1700(e) of the Internal Revenue Code of 1939 and on and after January 1, 1955, under the provisions of Section 4231 of the Internal Revenue Code of 1954. These sections of the Internal Revenue Code provide for the payment of a tax equivalent to 20 per cent of all amounts paid for admission, refreshment, service or merchandise at any roof garden, cabaret, or other similar place furnishing a public performance

for profit, by or for any patron or guest who is entitled to be present during any portion of such performance. The two sections insofar as they are pertinent to this case are identical.

Section 4231, Internal Revenue Code of 1954 provides in pertinent parts as follows:

"(6) Cabarets.—A tax equivalent to 20 percent of all amounts paid for admission, refreshment, service, or merchandise, at any roof garden, cabaret, or other similar place furnishing a public performance for profit, by or for any patron or guest who is entitled to be present during any portion of such performance. The tax imposed under this paragraph shall be returned and paid by the person receiving such payments. No tax shall be applicable under paragraph (1) or (2) on account of an amount paid with respect to which tax is imposed under this paragraph."

Section 4232(b) of the 1954 Code, 26 U.S.C.A. § 4232(b), provides as follows:

"(b) Roof garden, cabaret or other similar place.—The term 'roof garden, cabaret, or other similar place,' as used in this chapter, shall include any room in any hotel, restaurant, hall, or other public place where music and dancing privileges or any other entertainment, except instrumental or mechanical music alone, are afforded the patrons in connection with the serving or selling of food, refreshment, or merchandise. In no case shall such term include any ballroom, dance hall, or other similar place where the serving or selling of food, refreshment, or merchandise is merely incidental, unless such place would be considered, without the application of the preceding sentence, as a 'roof garden, cabaret, or other similar place'."

There was no admission charge made to the patrons of the Cloverleaf Bar or the Celebrity Room during any of the periods of time here involved. The only question to be determined is whether the sales made prior and subsequent to the period of taxable entertainment were properly taxed under the provisions of the tax code above set out.

In Riddell v. La Jolla Casa De Manana, Inc., 9 Cir., 1953, 206 F.2d 925, the Circuit Court of Appeals for the 9th Circuit affirmed the decision of the District Court, 106 F.Supp. 132, holding that the cabaret tax was not properly assessed against charges for sales and services subsequent to the end of the entertainment period. In that case the government contended that all payments for refreshments by or for any patron or guest entitled to be present during any portion of such performance meant that the basis of tax liability encompassed not only payments made for refreshments served during the performances but also payments made for refreshments served after the performances by any patron or guest who was present during any portion of the performance. This contention was rejected as being completely impractical. The Court there determined that the intent of Congress in passing the statute did not intend by the tax on cabarets to levy payments for refreshments served after the establishment ceased to be a cabaret. In that case it was held that when the taxable entertainment had concluded the establishment ceased to be a cabaret and that the imposition of any cabaret tax on sales or services rendered subsequent thereto was improperly levied. This Court has reviewed that opinion and the reasoning contained therein and is in wholehearted agreement with the interpretation the District Court there placed on the statute. The tax in the instant case which was collected on sales made and services rendered subsequent to the end of the entertainment period was improperly levied and collected. At the close of the entertainment the plaintiff's establishment was no longer a cabaret within the meaning of the statute. Any purchases made by the patrons subsequent to the end of the entertainment period did not, in the opinion

of the Court, in any way entitle them to be present during the taxable period. At the close of the entertainment the Cloverleaf Bar and the Celebrity Room were not cabarets within the meaning of the statute. The Court, therefore, finds that the tax collected on sales made and services rendered subsequent to the close of the entertainment period was improperly and unlawfully collected. Plaintiff shall be reimbursed for this improperly imposed tax with interest thereon at the legal rate.

Next to be considered is the deficiency levied and paid because of the sales made and services rendered between 8:00 P.M. and midnight, the period prior to the commencement of the taxable entertainment. The defendant estimated that approximately one-third of the patrons who came into the establishment between 8:00 P.M. and midnight stayed for and enjoyed the fruits of the entertainment. This assertion was not borne out by the evidence. The evidence showed that the attendance of patrons at the bar between 11:00 P.M. and midnight was less than at any other time.

The plaintiff's business was comprised primarily of transient patrons. The greater number in attendance at plaintiff's establishment between 11:00 P.M. and closing were those who had left other establishments either in the City of St. Louis and were returning to their homes in East St. Louis via Eads Bridge or those patrons who were returning from East St. Louis via Eads Bridge to their homes in St. Louis. This business usually increased after midnight for the reason that most of the bars in the two cities closed at 12:00 o'clock midnight. Plaintiff's business increased subsequent to midnight. Its early patrons usually departed prior to midnight. Some did remain for at least a part of the entertainment. The Court finds that the one-third estimate is grossly exaggerated and completely arbitrary.

The statute provides that a tax shall be assessed for all amounts paid for admission, refreshment, service, or merchandise by or for any patron or guest who is entitled to be present during any portion of such performance.

In the matter of The Alpine Village, Inc., Bankrupt (United States District Court, Northern District, Ohio, Eastern Div., Bankruptcy 78168, August 13, 1958), the Court was there called upon to rule on the same question that is here presented. In that case the patrons before receiving their checks were asked whether or not they intended to remain for the entertainment. If an affirmative answer was given, the cabaret tax was added to the check and was paid by the establishment. If a negative answer was received, the tax was not added to the check nor was a tax paid by the establishment. The government charged that a greater number of patrons, although they had alleged they were not remaining for the entertainment, did in fact remain and enjoy at least a part of the entertainment. It was there held that the tax collected by the establishment in the manner above described and paid in accordance therewith was proper.

In the instant case the evidence showed that some of the sales were paid for immediately and others were placed on guest checks which were paid at the time the patrons departed the establishment.

Under the statute all sales made and services rendered during the entertainment period, i. e. between midnight and 3:00 A.M., were taxable and a tax thereon was properly charged; all payments for services, refreshments, etc., made during the entertainment period were taxable, regardless of whether the purchases were made prior to or during the taxable period. Where a patron had made purchases on a guest check prior to the taxable period and remained for a portion or all of the entertainment period, these purchases entitled him to be present for at least a part of the entertainment period and a tax thereon was properly assessed.

The Court finds that all sales made subsequent to the entertainment period were improperly taxed; that all sales made during the entertainment period were properly taxed; that all guest

checks paid during or after the entertainment period which reflect sales prior to or during the entertainment period were properly subject to the cabaret tax.

The tax was properly levied on all sales made and services rendered during the taxable period and on all amounts received during the taxable period for sales made or services rendered prior to or during the period of entertainment.

Parties to settle the order.