**BUSH'S, INC., Plaintiff-Appellee,**

**v.**

**UNITED STATES of America, Defendant-Appellant.**

**No. 12817.**

United States Court of Appeals Seventh Circuit.

April 29, 1960.

C. M. Raemer, U. S. Atty., East St. Louis, Ill., Charles K. Rice, Asst. Atty. Gen., Tax Division, Arthur I. Gould, Lee A. Jackson, Robert N. Anderson, Attys., Dept. of Justice, Washington, D. C., James B. Moses, Asst. U. S. Atty., East St. Louis, Ill., for appellant.

Harold G. Baker, Jr., John M. Ferguson, East St. Louis, Ill., Wagner, Conner, Ferguson, Bertrand & Baker, East St. Louis, Ill., of counsel, for appellee.

Before DUFFY, SCHNACKENBERG and KNOCH, Circuit Judges.

KNOCH, Circuit Judge.

Plaintiff sued to recover "cabaret" taxes and interest thereon, imposed pursuant to Section 1700(e), Internal Revenue Code of 1939, 26 U.S.C.A. § 1700(e), and Section 4231, Internal Revenue Code of 1954, 26 U.S.C.A. § 4231. During the period from December 1, 1951, to September 30, 1955, plaintiff operated an establishment which comprised several dining rooms and bars.

Taxable entertainment was not offered in all of these. We are concerned only with the Cloverleaf Bar and the Celebrity Room, the latter being open to the general public only on Saturday nights and solely for private parties if opened at other times.

It is undisputed that plaintiff was subject to payment of cabaret tax for sales and receipts from about midnight to three o'clock A.M. daily (except for certain Mondays) in the Cloverleaf Bar, and on Saturdays in the Celebrity Room, because of the type of entertainment provided in those rooms during those hours.

Plaintiff established and maintained a record system whereby readings were taken on cash registers at the beginning of the taxable period, to reflect "zero" amounts of sales, and again at the close of the entertainment period, which readings were entered in a special record book, to determine the gross amounts of sales and receipts during the taxable entertainment.

The taxes were computed and paid by plaintiff in the aggregate sum of $20,-957.08. The evidence showed that sales and receipts were rung up immediately so that delays in payment could not affect the accuracy of the record system. The amount of tax paid by plaintiff for sales and receipts during the hours mentioned is not in dispute. Defendant's agents, however, assessed a deficiency of $14,825.90 on ⅓ of the total sales made from eight o'clock P.M. to the beginning of the entertainment on the ground that an estimated one-third of the persons in attendance during those hours remained, and were entitled to remain, to view and to participate in the taxable entertainment, and on ½ of the total sales made from the end of the taxable entertainment until the establishment closed, on the ground that an estimated one-half of the persons then in attendance had been present, and were entitled to have been present, to view and to participate in the earlier taxable entertainment. Plaintiff's protest of this deficiency was disallowed by the defendant's agents. Plaintiff paid the deficiency plus interest in the amount of $2,609.45, and brought this action to recover those sums.

The pertinent sections of the Statute are:

Internal Revenue Code of 1954, Section 4231,

"(6) Cabarets.—A tax equivalent to 20 percent of all amounts paid for admission, refreshment, service, or merchandise, at any roof garden, cabaret, or other similar place furnishing a public performance for profit, by or for any patron or guest who is entitled to be present during any portion of such performance. The tax imposed under this paragraph shall be returned and paid by the person receiving such payments. No tax shall be applicable under paragraph (1) or (2) on account of an amount paid with respect to which tax is imposed under this paragraph."

Internal Revenue Code of 1954, Section 4232(b), 26 U.S.C.A. § 4232(b),

"Roof garden, cabaret or other similar place.—The term 'roof gar-

den, cabaret, or other similar place,' as used in this chapter, shall include any room in any hotel, restaurant, hall, or other public place where music and dancing privileges or any other entertainment, except instrumental or mechanical music alone, are afforded the patrons in connection with the serving or selling of food, refreshment, or merchandise. In no case shall such term include any ballroom, dance hall, or other similar place where the serving or selling of food, refreshment, or merchandise is merely incidental, unless such place would be considered, without the application of the preceding sentence, as a 'roof garden, cabaret, or other similar place.' "

No admission charge was made by plaintiff. Plaintiff absorbed the cabaret tax out of the total price of items sold. The prices in all rooms, including those in which no entertainment was provided at any time, were increased at about midnight to cover all increased costs of doing business at that later hour of the night. Signs were displayed to advise patrons in the Cloverleaf Bar that during the hours of entertainment all prices would include cabaret and State sales taxes. Anyone served in the other rooms, or anyone coming in off the street, could walk freely into the Cloverleaf Bar and observe the entertainment without cost.

The learned District Judge held that Congress had not intended to levy a tax on receipts collected for refreshments before the beginning or after the conclusion of the entertainment which qualified the rooms as cabarets within the meaning of the statutes, and that other than during the time of the taxable entertainment, the rooms were not cabarets. He further held that receipt of payment before or after the taxable entertainment, when the rooms were not cabarets, did not entitle the customers, from whom the payment was received, to be present during the entertainment.

■■ The District Judge also found that the ⅓ and ½ estimates, by the Commissioner, of pre- and post-enter-

tainment patrons who viewed the entertainment were arbitrary and exaggerated. The government contends that the evidence failed to show, or the District Court to find, what proportion of the pre- and post-entertainment patrons did view the entertainment. The District Court found that most of the early patrons departed prior to midnight when the taxable entertainment began. Witnesses testified that 8 to 10% of the pre-entertainment and 5 to 10% of the post-entertainment patrons might have been present during the entertainment, and that practically all patrons left after the entertainment, with service continuing principally to such few patrons as came in late after other establishments had closed. As the government argues, there is a presumption that the Commissioner's determination of a deficiency is correct. That presumption, however, may be overcome by proof in rebuttal. The taxpayer's witnesses here did testify that the figures were more likely 8 to 10% and 5 to 10%, rather than the 33⅓% and 50% estimates of the Commissioner. Nevertheless, there is no dispute as to the taxes paid on sales and receipts during the period of taxable entertainment; the District Judge found no tax whatsoever due on sales and receipts for the periods prior to and subsequent to the taxable entertainment. In view of our determination that the District Judge was correct in his ruling, we do not reach the question of the exact amount of tax which would have been due had the District Judge adopted the government's theory of the case.

The Trial Judge accordingly entered judgment for plaintiff, and this appeal followed.

The government argues that the Statute imposes the cabaret tax on all sales made to customers present during any portion of the entertainment; that practical difficulties in ascertaining whether a particular patron will remain after paying his bill or whether a post-entertainment patron has seen part of the entertainment before ordering any refreshment, do not justify implying an un-

stated exception to the statute in favor of these classes of patrons. Under the reasoning of the District Judge, the government feels that the tax might be nullified by the suspension of service during the entertainment.

Both plaintiff and defendant rely largely on the same cases. We have given careful consideration to these and other authorities coming to our attention.

In La Jolla Casa de Manana v. Riddell, D.C.S.D.Cal.1952, 106 F.Supp. 132, 135, affirmed 9 Cir., 1953, 206 F.2d 925, the Trial Court held that the Statute clearly showed that Congress did not intend to reach payments for refreshments served after the establishment had ceased to be a cabaret; that Congress envisioned an essential unity between service of refreshment and enjoyment of entertainment. This decision was published in 1953. Yet neither in the 1954 re-enactment of the excise tax provisions of the Internal Revenue Code, nor in the 1958 excise tax technical changes, did Congress alter the language used.

In Hover v. United States, D.C.S.D.Cal. 1958, 158 F.Supp. 179, 182, affirmed 9 Cir., 1959, 268 F.2d 657, the Court considered a government counterclaim for cabaret tax on amounts expended by patrons attending private parties on the premises, who stayed on to see the floor show entertainment in the main room which was made visible to them by opening a removable partition between the main room and the private dining room. The Trial Judge in Hover said that the cabaret tax must not be construed to produce irrational or illogical results. He considered the La Jolla ruling on post-entertainment receipts equally applicable to pre-entertainment receipts and concluded that:

> "To condition a tax on such a tenuous showing that the patrons might if they were to wait long enough view the entertainment does not accord with any meaningful or purposeful distinction that we must impute to Congress."

The Ninth Circuit in affirming Hover (at page 664) found considerable legislative history showing an intent by Congress to levy the tax only on receipts taken during the entertainment, citing in particular Sen.Rep. No. 1683, 77th Congress, 2nd Sess. page 79, which deals with amendment of the earlier tax on admissions. That Report states:

> "Thus the tax will be collected although a cabaret does not increase its prices for food or beverages while its floor show is in progress."

The Ninth Circuit concluded that the tax applies only where entertainment is "afforded the patrons in connection with the serving or selling of food, refreshment or merchandise."

In the Matter of the Alpine Village, Inc., N.D.Ohio, 1958, 58-2 U.S.Tax Cases (CCH) Paragraph 15,182, dealt with a claim against a bankrupt theatre-restaurant for cabaret tax on receipts from service to patrons prior to the entertainment. In sustaining objections to the claim, the Referee found that Alpine had reasonably complied with the Statute. Unlike plaintiff here, Alpine imposed an "entertainment charge" and established a minimum order for the hours after 8:-30 P.M.—an arbitrary time fixed shortly before the entertainment was due to begin. Customers paying their bills before 8:30 P.M. were asked whether they intended to remain. If they said "no," their checks were stamped "no show," if they said "yes," the higher charges and a 20% cabaret tax were imposed. Some patrons remained in spite of having indicated an intention not to, but the Referee considered these not to be "entitled" to remain.

The government relies on Godwin v. Brown, 8 Cir., 1957, 249 F.2d 356, 361–362, in support of the theory that the test is not when the amount is paid, but whether the patron was present during the entertainment. The taxpayer in Godwin claimed a refund on the ground that computation of the 20% tax had been made on receipts which already included a 20% cabaret tax and a 2% State tax. The government intervened praying judgment for cabaret tax for a later period. Because of amendments to the Rev-

enue Act of 1951, the taxpayer asserted that his establishment was no longer subject to the cabaret tax. The Trial Court apparently agreed, and the jury was instructed that plaintiff-taxpayer was subject to the cabaret tax only for periods prior to November 1, 1951. The Eighth Circuit, however, took the position that the evidence showed the establishment to be a public place where, after 8 P.M., entertainment was afforded the patrons in connection with the serving of food and that the evidence did not justify the instructed verdict. The statement about the test, on which the government relies, appears in one of the instructions given in the Trial Court in connection with computation of the amount of refund due. The entire instruction reads:

"The law imposes a cabaret tax in an amount equivalent to 20% of all amounts paid for admission, refreshment, service, or merchandise at any cabaret or other similar place furnishing a public performance for profit by or for any patron or guest who is entitled to be present during any portion of such performance.

"The words 'entitled to be present' as used in this law means patrons or guests who actually remain during any portion of the dancing or entertainment. A patron who pays and leaves the establishment before the dancing and entertainment begins does not come within the meaning of this language. In other words, the test is not when the amount is paid, but instead is whether the person paying for refreshments, etc., was present during any portion of the dancing or entertainment."

In Godwin, the taxpayer found it difficult to identify and segregate receipts from patrons who came early, paid, and left before the entertainment, and, further, some of the taxpayer's books had been lost in a flood of the basement premises. The government in Godwin contended that the taxpayer had attributed too large a percentage of the receipts to those who paid and left prior to the entertainment. The Eighth Circuit found the testimony of the government's expert witness on this point persuasive but not so completely demonstrative as to entitle the government to an instructed verdict. The Eighth Circuit also found that there was no error in the District Court's failure to direct a verdict for the government as the Trial Court was not required to rule on the sufficiency of the evidence to go to the jury, absent a motion for a directed verdict at the close of all the evidence. It does not appear that the parties in Godwin raised any question as to the applicability of the tax to those who remained after paying their checks and viewed the entertainment, but who were not "entitled" to be present.

In Rokicki v. United States, D.C.N.D. Ohio 1958, 164 F.Supp. 610, the Court entered judgment for the government, holding that it was reasonable under the Statute, the regulations, and decisions, for the government to contend that payment for service between 7:30 and 9:00 P.M., prior to the entertainment, was subject to the cabaret tax if the admission charges which the guest paid entitled him to remain, and he did remain, for the entertainment. Rokicki was decided on stipulated facts. Entertainment began at 9:15 P.M. However customers were charged admission fees beginning at 7:30 P.M. The taxpayer had paid the cabaret tax on the admission fees collected between 7:30 and 9:15 P.M. but argued that no tax was due on receipts from refreshments served prior to 9:00 P.M. The case differs factually from the matter before us.

It thus appears to us that the weight of authority supports the conclusions of the District judge in the case at bar.

■ If refund is appropriate, the government contends that plaintiff is barred from receiving it for failure to satisfy the conditions of Section 6416(a), Internal Revenue Code of 1954, 26 U.S.C.A. § 6416(a):

"Condition to allowance.—No credit or refund of any overpayment of tax * * * shall be allowed unless the person who paid the tax es-

tablishes under regulations prescribed by the Secretary or his delegate—

"(1) That he had not included the tax in the price of the article or service with respect to which it was imposed or has not collected the amount of the tax from the vendee; or

"(2) Has repaid the amount of the tax to the purchaser * * * ; or

"(3) Has filed with the Secretary or his delegate the written consent of such purchaser * * * to the allowance of the credit or refund * * *."

Plaintiff argues that on the contrary the evidence does not support a contention that the cabaret tax, sought to be refunded was collected from any of the patrons. All prices for food and drink in all the rooms were uniformly increased at about midnight to cover all the increased costs of doing business, including such items as license fees and over-time wages. The figures in evidence are inconsistent with the conclusion that plaintiff had increased the prices by the amount of the cabaret tax.

We find one case dealing with the cabaret tax in regard to limitation of recovery to those who have borne the burden: 123 East Fifty-Fourth St., Inc. v. United States, 2 Cir., 1946, 157 F.2d 68. There the majority affirmed a judgment for refund of cabaret taxes improperly levied in the erroneous belief that the taxpayer's establishment qualified as a cabaret. The majority held that the limitation statute, in its then form, did not apply to cabaret taxes, which might be refunded without respect to any windfall effect or resulting unjust enrichment. In his dissenting opinion, Circuit Judge L. Hand argued that the taxpayer in that case was barred from refund if it had charged its guests the amount of the tax for which it supposed itself liable as a separate item specifically described as a tax. Judge Hand considered the distinction as crucial whether the taxpayer had made the charge in that form, or had merely included the amount in the bills rendered without saying anything about it (at page 70).

In the case before us, the prices were raised in all the rooms at about the time of the entertainment. The signs posted in the Cloverleaf Bar read:

"During the hours of entertainment all prices include 20% Cabaret Tax and 2% State Sales Tax."

Thus no cabaret tax as such was collected from pre- and post-entertainment patrons. In our opinion, Section 6416(a) is not applicable to bar recovery by plaintiff.

As we find no error in the proceedings below, the judgment of the District Court is hereby affirmed.